ESTELLE, CORRECTIONS DIRECTOR *v.*
DORROUGH

No. 74-479.  Decided March 17, 1975

PER CURIAM.

Respondent Jerry Mack Dorrough was convicted in
1963 in a Texas District Court of robbery and sentenced
to a term of imprisonment for 25 years.  After he was
sentenced and had filed an appeal to the Texas Court of
Criminal Appeals, he escaped from the Dallas County
jail by stealing a federal mail truck.  He was recaptured

two days after his escape. After his recapture, the Texas Court of Criminal Appeals removed his appeal from its docket pursuant to the provisions of Texas Code of Criminal Procedure Ann., Art. 44.09 (1966), which provides for the automatic dismissal of such pending appeals by an escaped felon upon escape with provision for reinstatement of the appeal if the felon voluntarily surrenders within 10 days of his escape.[1]

After recapture, respondent was tried and convicted on federal charges and given a 25-year federal sentence which he is currently serving. The State of Texas has filed a detainer warrant with federal authorities against Dorrough in order to compel him to serve the remainder of his state sentence upon release from federal custody. In 1972, respondent filed in the United States District Court

---

[1] Texas Code of Criminal Procedure Ann., Art. 44.09, provides:

"If the defendant, pending an appeal in the felony case, makes his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case. Upon the fact of such escape being made to appear, the court shall, on motion of the State's attorney, dismiss the appeal; but the order dismissing the appeal shall be set aside if it is made to appear that the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped; and in cases where the punishment inflicted by the jury is death or confinement in an institution operated by the Department of Corrections for life, the court may in its discretion reinstate the appeal if the defendant is recaptured or voluntarily surrenders within thirty days after such escape."

This provision was adopted by Texas in 1879 replacing a somewhat similar common-law rule discussed in *Ex parte Wood,* 19 Tex. Ct. App. 46 (1885). The clause authorizing discretionary reinstatement of an appeal from a sentence of death or life imprisonment was added by amendment in 1933. Laws 1933, c. 34. Since the statute provides that jurisdiction shall "no longer attach" upon escape, the escape itself divests the court of jurisdiction with later dismissal being a mere formality. *Lafferty* v. *State,* 123 Tex. Cr. R. 570, 60 S. W. 2d 222 (1933); *Ex parte Gurley,* 104 Tex. Cr. R. 578, 286 S. W. 222 (1926).

for the Northern District of Texas a complaint which was treated by that court as a petition for writ of habeas corpus, alleging that the 1963 dismissal of his appeal under Art. 44.09 denied him equal protection of the law in violation of the Fourteenth Amendment.[2] The United States District Court denied relief, holding that Art. 44.09 was a rational exercise of legislative power.[3] The United States Court of Appeals for the Fifth Circuit reversed. It held that Art. 44.09 denied respondent equal protection of the law, and ordered that the State's detainer warrant would be voided unless Texas provided respondent with either a direct appeal or a new trial.[4] Petitioner has now sought review by certiorari, pursuant to 28 U. S. C. § 1254 (1), of the judgment of the Court of Appeals. For the reasons stated, we grant the writ and reverse the judgment.

The Court of Appeals correctly recognized that there is no federal constitutional right to state appellate review of state criminal convictions. *McKane* v. *Durston,* 153 U. S. 684, 687 (1894); *Griffin* v. *Illinois,* 351 U. S. 12, 18

[2] *Braden* v. *30th Judicial Circuit Court of Kentucky,* 410 U. S. 484 (1973), indicates that one under a state detainer warrant is considered to be in custody for the purpose of federal habeas relief. The District Court concluded that respondent had properly exhausted his state remedies, and the petitioner did not urge failure of exhaustion in the Court of Appeals.

[3] The only contention presented to the District Court as evidenced by its opinion was the constitutionality of Art. 44.09 discussed herein. Respondent seeks here to raise other issues not raised below, at least some of which were considered and rejected by other courts during the course of his five prior actions in the federal system. See 327 F. 2d 667 (CA5 1964); 344 F. 2d 125 (CA5 1965); 397 F. 2d 811 (CA5), cert. denied, 394 U. S. 1019 (1969); 440 F. 2d 1063 (CA5), cert. denied, 404 U. S. 840 (1971); 440 F. 2d 1336 (CA5), cert. denied, 404 U. S. 915 (1971).

[4] The decision of the District Court is unreported. The decision of the Court of Appeals is reported at 497 F. 2d 1007.

(1956); *Ross* v. *Moffitt,* 417 U. S. 600, 610–611 (1974). Disposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law. 18 Geo. Wash. L. Rev. 427, 429 (1950). This Court itself has long followed the practice of declining to review the convictions of escaped criminal defendants. *Smith* v. *United States,* 94 U. S. 97 (1876); *Bonahan* v. *Nebraska,* 125 U. S. 692 (1887); *Eisler* v. *United States,* 338 U. S. 189 (1949); *id.,* at 883; cf. *Allen* v. *Rose,* 419 U. S. 1080 (1974). Thus in *Molinaro* v. *New Jersey,* 396 U. S. 365 (1970), we dismissed the appeal of an escaped criminal defendant, stating that no persuasive reason exists to adjudicate the merits of such a case and that an escape "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Id.,* at 366. In *Allen* v. *Georgia,* 166 U. S. 138 (1897), we upheld as against a constitutional due process attack a state court's dismissal of the appeal of an escaped prisoner and its refusal to reinstate the appeal upon his later recapture. See also *National Union* v. *Arnold,* 348 U. S. 37, 43 (1954).

The Texas courts have found similar ends served by Art. 44.09. It discourages the felony of escape and encourages voluntary surrenders.[5] It promotes the efficient, dignified operation of the Texas Court of Criminal Appeals.[6]

The Court of Appeals, however, found two classifications created by the statute to lack any rational relation to its purposes and hence concluded that the statute was unconstitutional as violative of the Equal Protec-

---

[5] *Rodriguez* v. *State,* 457 S. W. 2d 555, 556 (Tex. Crim. App. 1970).

[6] *Loyd* v. *State,* 19 Tex. Ct. App. R. 137, 155 (1885). See also 18 Geo. Wash. L. Rev. 427, 430 (1950).

tion Clause.[7] That court recognized that appeals from state criminal convictions are not "explicitly or implicitly guaranteed by the Constitution," *San Antonio Independent School District* v. *Rodriguez,* 411 U. S. 1, 33–34 (1973), and that this Court in dealing with equal protection challenges to state regulation of the right of appeal in criminal cases had applied the traditional rational-basis test. *Rinaldi* v. *Yeager,* 384 U. S. 305 (1966). There this Court said:

> " 'The Constitution does not require things which are different in fact . . . to be treated in law as

---

[7] 497 F. 2d, at 1012–1013. The court below specifically rejected the notion that immediate dismissal with refusal to reinstate appeals of escaped defendants was constitutionally objectionable and rested its decision wholly on the asserted lack of rational connection between the statutory classifications and the statute's purposes.

But our Brother STEWART resurrects this rejected argument and adopts it in his dissent, saying that the Texas statute may not rationally be said to discourage the felony of escape and encourage voluntary surrender. Such a judgment, of course, is one in the first instance for the legislature, *Williamson* v. *Lee Optical Co.,* 348 U. S. 483 (1955), and we may strike down such a legislative judgment only if we conclude that it is indeed irrational. We do not believe that it is. Nor is it accurate to suggest that the only purpose served by the Texas statute is the deterrence of escapes: it is also designed to secure the State's interest in orderly judicial procedure. The right of appeal from a judgment of conviction in both the federal and state systems is almost uniformly conditioned, for example, upon the filing of a notice of appeal within a prescribed time limit. See Fed. Rule App. Proc. 4 (b); n. 10, *infra.* The vindication of orderly procedure secured by the Texas statute under attack here is no less a permissible choice for the legislature than is the vindication of that interest by such procedural requirements. In a case indistinguishable from the present one on this issue, this Court in *Allen* v. *Georgia,* 166 U. S. 138, 141 (1897), upheld the refusal of the Georgia courts to reinstate the appeal of a recaptured prisoner, stating that "it seems but a light punishment for such offence to hold" that he has abandoned such appeal.

though they were the same.' *Tigner* v. *Texas,* 310 U. S. 141, 147. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' *Baxstrom* v. *Herold,* 383 U. S. 107, 111; *Carrington* v. *Rash,* 380 U. S. 89, 93; *Louisville Gas Co.* v. *Coleman,* 277 U. S. 32, 37; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415." *Id.,* at 309.

The Court of Appeals thought that this test rendered the statute invalid for two reasons. First, while the statute provides for reinstatement of the appeal of most escaped felons only if they voluntarily surrender within 10 days, the Texas Court of Criminal Appeals may in its discretion reinstate the appeals of prisoners under a sentence of life imprisonment or death if they are returned to custody within 30 days.[8] Second, the statute applies only to those prisoners with appeals pending at the time of their escape; prisoners who have not invoked the appellate process by filing an appeal at the time of their escape may still appeal after recapture if applicable appellate time limits have not run. We disagree with the analysis of the Court of Appeals, and find that neither of these distinctions offends the Equal Protection Clause.

Insofar as the separate treatment of prisoners under a sentence of life imprisonment or death is concerned, we see no reason why the Texas Legislature was not free to separate these two most severe sentences from other

---

[8] See n. 1, *supra.* The statute merely allows the court in its discretion to reinstate such appeals. In the past, the court has both granted leave to reinstate and refused it under a test of "good cause shown." *Bland* v. *State,* 224 S. W. 2d 479 (Tex. Crim. App. 1949); *Foster* v. *State,* 497 S. W. 2d 291 (Tex. Crim. App. 1973).

terms of imprisonment, and provide an additional period of discretionary review for them but not for the remainder. The Court of Appeals determined that under Texas law a prisoner serving a sentence for a term greater than 60 years would not be eligible for parole any sooner than a prisoner under life sentence, and from that fact concluded that there could be no rational distinction between those serving a life term and those serving a term in excess of sixty years. 497 F. 2d 1007, 1012–1013. It is not altogether clear how respondent, who himself has been sentenced to 25 years, could assert the rights of those under term sentences of 60 years or more.[9] But apart from this difficulty, we see no reason why the Texas Legislature could not focus on the actual severity of the sentence imposed in making distinctions, rather than on the collateral consequence of sentence elaborated by the Court of Appeals. The State of Texas could reasonably balance its concern with deterring escapes and encouraging surrenders with its alternative interest in allowing the validity of particularly severe sentences to be tested by appellate review. In doing so, it was not required to draw lines with "mathematical nicety." *Lindsley* v. *National Carbonic Gas Co.,* 220 U. S. 61, 78–79 (1911); *Morey* v. *Doud,* 354 U. S. 457, 463–464 (1957).

Nor do we find the statutory limitation of the dismissal requirement to those prisoners with appeals pending at the time of their escape violative of the Equal Protection Clause. The Court of Appeals felt that the statute was "underinclusive" for this reason, since a prisoner who had not invoked the appellate process by filing an appeal at the time of his escape might still appeal after recapture if the prescribed time for filing an appeal had not expired.

Criminal defendants in Texas are subject to relatively

---

[9] Cf. *United States* v. *Raines,* 362 U. S. 17, 21–24 (1960).

stringent time limits for filing their appeals.[10]   Since an escaped defendant cannot comply with the required appellate steps during the time he is not confined, these time limits serve much the same function as Art. 44.09. Whatever difference in treatment exists between the class of prisoners who escape, return, and are nonetheless able to file an appeal, and those whose appeals are dismissed pursuant to Art. 44.09, is sufficiently rational to withstand a challenge based on the Equal Protection Clause. Texas was free to deal more severely with those who simultaneously invoked the appellate process and escaped from its custody than with those who first escaped from its custody, returned, and then invoked the appellate process within the time permitted by law.   While each class of prisoners sought to escape, the first did so in the very midst of their invocation of the appellate process, while the latter did so before returning to custody and commencing that process.   If Texas is free to adopt a policy which deters escapes by prisoners, as all of our cases make clear that it is, it is likewise free to impose more severe sanctions on those whose escape is reasonably calculated to disrupt the very appellate process which

---

[10] See Tex. Code of Crim. Proc. Ann., Arts. 40.05, 40.09 (1966 ed., and Supp. 1974–1975), 44.08 *et seq.*   For example, in the cases cited by the lower court as involving pre-appeal escapes with subsequent appeals, the appellants forfeited substantially all of their appeal rights through failure to file a timely record or bill of exceptions.   *Webb* v. *State,* 460 S. W. 2d 903 (Tex. Crim. App. 1970); *McGee* v. *State,* 445 S. W. 2d 187 (Tex. Crim. App. 1969). In Texas the trial judge has the power to file the record with the Court of Criminal Appeals and if he does so prior to recapture of an escaped prisoner, the appeal is dismissed under Art. 44.09.   *Webb* v. *State,* 449 S. W. 2d 230 (Tex. Crim. App. 1969); *Redman* v. *State,* 449 S. W. 2d 256 (Tex. Crim. App. 1970); *Ballage* v. *State,* 459 S. W. 2d 823 (Tex. Crim. App. 1970).

they themselves have set in motion.[11]  *Ross* v. *Moffitt,*
417 U. S., at 610.

The motion of respondent for leave to proceed *in forma
pauperis* and the petition for certiorari are granted, and
the judgment of the Court of Appeals for the Fifth
Circuit is

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting, agrees with much of
the dissenting opinion of MR. JUSTICE STEWART, but unlike
him, would also affirm the judgment for the reasons stated
by the Court of Appeals, 497 F. 2d 1007, 1012–1014
(CA5 1974).

MR. JUSTICE STEWART, with whom MR. JUSTICE BREN-
NAN and MR. JUSTICE MARSHALL join, dissenting.

If the shortcomings of the challenged Texas statute
were only those addressed by the Court, I could join the
Court's opinion.  For I agree that Art. 44.09 is not
rendered unconstitutional by its more lenient treatment
of escaped felons under sentence of death or life imprison-
ment, nor by its asserted "underinclusive" inapplicability
to a felon who escapes and is returned to custody involun-
tarily before his appeal is filed.  But I think the Court
has failed to come to grips with the real constitutional
defect in the challenged statute.

---

[11] The peculiar problems posed by escape of a prisoner during the
ongoing appellate process were explored in *Loyd* v. *State,* 19 Tex.
Ct. App. R., at 155, in the course of upholding the constitutionality
of this statute:

"[L]et us suppose that the convict, pending his appeal, should
escape and remain at large twenty or thirty days; what disposition
should be made of his appeal? . . . Should this court wait until
his return to custody?  How long must it wait?  Until it suits the
prisoner's convenience? . . . [W]e are of the opinion that [Art.
44.09] is not only reasonable but eminently wise."

See also *Allen* v. *Georgia,* 166 U. S., at 141.

In summarily reversing the judgment before us the Court relies upon decisions establishing the long-settled "practice of declining to review the convictions of escaped criminal defendants." *Ante,* at 537. See *Smith* v. *United States,* 94 U. S. 97 (1876); *Bonahan* v. *Nebraska,* 125 U. S. 692 (1887); *Molinaro* v. *New Jersey,* 396 U. S. 365 (1970). See also *Allen* v. *Georgia,* 166 U. S. 138 (1897). But these decisions have universally been understood to mean only that a court may properly dismiss an appeal of a fugitive convict *when, and because,* he is not within the custody and control of the court. Until today, this Court has never intimated that under the rule of *Smith, Bonahan,* and *Molinaro* a court might dismiss an appeal of an escaped criminal defendant at a time when he has been returned to custody, and thus to the court's power and control.*

The rationale for the dismissal of an appeal when the appellant is at large is clearly stated in the *Smith* decision:

> "It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. In this case it is admitted that the plaintiff in error

---

*The Court in *Molinaro* v. *New Jersey* relied upon a Note, 18 Geo. Wash. L. Rev. 427, 430 (1950), which is cited in the Court's opinion today. *Ante,* at 537. The rule and its rationale are correctly stated in that Note: "A review of criminal appeal cases both in state and federal courts shows that when an appellant has escaped from custody and cannot be brought before the court, his case is not left pending indefinitely. In the absence of any statutory regulation, dismissal is granted in some form . . . . The basic theory behind all criminal cases has always been that there must be a defendant in the power and under the control of the court, and that there be someone who can respond to the judgment." 18 Geo. Wash. L. Rev., at 428–429.

has escaped, and is not within the control of the court below, either actually, by being in custody, or constructively, by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case." 94 U. S., at 97.

See also *Bonahan* v. *Nebraska,* 125 U. S. 692 (1887).

Here, as the Court notes, Dorrough was recaptured two days after his flight. And, as the Court also notes, his appeal was dismissed *after* his recapture. In this situation, the rule of *Smith-Bonahan-Molinaro* provides no support whatever for the Texas law that deprived Dorrough of his right to appeal.

If the challenged statute can be sustained, it must rest upon the alternative ground advanced by the Court—that, as a punitive and deterrent measure enacted in the exercise of the State's police power, it "discourages the felony of escape and encourages voluntary surrenders." But the statute imposes totally irrational punishments upon those subject to its application. If an escaped felon has been convicted in violation of law, the loss of his right to appeal results in his serving a sentence that under law was erroneously imposed. If, on the other hand, his trial was free of reversible error, the loss of his right to appeal results in no punishment at all. And those whose convictions would have been reversed if their appeals had not been dismissed serve totally disparate sentences, dependent not upon the circumstances of their escape, but upon whatever sentences may have been meted out under their invalid convictions. In my view, this random pattern of punishment cannot be considered a rational means of enforcing the State's interest

in deterring and punishing escapes. Cf. *McLaughlin* v. *Florida,* 379 U. S. 184, 191 (1964); *Rinaldi* v. *Yeager,* 384 U. S. 305, 309 (1966); *U. S. Dept. of Agriculture* v. *Moreno,* 413 U. S. 528, 538 (1973).

A closely analogous case was considered by the Supreme Court of Idaho in *In re Mallon,* 16 Idaho 737, 740–741, 102 P. 374 (1909). There the court considered a statute providing:

> " ' . . . Every state prisoner confined in the state prison for a term less than for life, who escapes therefrom, is punishable by imprisonment in the state prison for a term equal in length to the term he was serving at the time of such escape; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison.' "

The court concluded that the statute at issue was unconstitutional. Similarly the Supreme Court of Kansas in *State* v. *Lewin,* 53 Kan. 679, 37 P. 168 (1894), held unconstitutional a statute providing that upon escape a convict was to be punished by imposition of the full term of the sentence under which he had initially been imprisoned, without credit for any time served before the escape.

Under these Idaho and Kansas statutes, two men escaping at the same time and in the same manner could receive wholly different sentences, not related at all to the gravity of the offense of escape. That is precisely the vice of the Texas statute at issue in the present case.

I would affirm the judgment of the Court of Appeals.