## ALPHONSO VALLE *v.* COMMISSIONER OF CORRECTION
### (SC 15773)

Borden, Berdon, Katz, McDonald and Peters, Js.

Argued February 17—officially released May 12, 1998

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (respondent).

*Christopher C. Sheehan*, assistant public defender, for the appellee (petitioner).

*Opinion*

PER CURIAM. The petitioner, Alphonso Valle, pleaded guilty in 1993 to the charges of burglary in the

third degree in violation of General Statutes § 53a-103 and, subsequently, violation of probation in violation of General Statutes § 53a-32. On February 15, 1996, the petitioner filed a petition seeking a writ of habeas corpus concerning the date of his release from incarceration, which was granted on April 11, 1996. On May 28, 1996, the respondent, the commissioner of correction, filed his appeal from the habeas court's judgment to the Appellate Court. On or around July 10, 1996, and prior to oral argument before the Appellate Court, however, the petitioner failed to return from a period of leave to the halfway house in Bridgeport where he was in the custody of the department of correction.

The Appellate Court affirmed the habeas court's judgment. *Valle* v. *Commissioner of Correction*, 45 Conn. App. 566, 696 A.2d 1280 (1997). The respondent then filed a petition for certification from the Appellate Court's judgment, which we granted.[1]

The petitioner's absence from legal custody without leave " 'disentitles [him] to call upon the resources of the Court for determination of his claims.' " *Estelle* v. *Dorrough*, 420 U.S. 534, 537, 95 S. Ct. 1173, 43 L. Ed. 2d 377 (1975), quoting *Molinaro* v. *New Jersey*, 396 U.S. 365, 366, 90 S. Ct. 498, 24 L. Ed. 2d 586 (1970); *State* v. *Leslie*, 166 Conn. 393, 395, 349 A.2d 843 (1974); see *State* v. *Patterson*, 236 Conn. 561, 581, 674 A.2d 416 (1996).

Our unwillingness to decide the merits of the issue before us also finds support in the fact that the petitioner's claim arose in the context of a prayer for relief by

[1] We granted the respondent's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that a prisoner serving multiple concurrent sentences imposed by different courts on different dates is entitled to have presentence confinement credit applied to each of these sentences when that credit represents the same period of presentence confinement?" *Valle* v. *Commissioner of Correction*, 243 Conn. 909, 701 A.2d 338 (1997).

way of a writ of habeas corpus. "Habeas corpus provides a special and extraordinary legal remedy for illegal detention." *Reed* v. *Reincke*, 155 Conn. 591, 594, 236 A.2d 909 (1967). The phrase "habeas corpus," itself, means "you have the body." Black's Law Dictionary (6th Ed. 1990). Historically, the purpose of the writ has been to provide a vehicle for judicial inquiry into whether a petitioner's imprisonment is illegal. See *Vincenzo* v. *Warden*, 26 Conn. App. 132, 136–37, 599 A.2d 31 (1991). Because the petitioner is no longer in the custody of the commissioner of correction, we properly may decline to inquire into the merits of his claim that, at some time in the past, he was being detained illegally.

We point out that, in view of these circumstances, we do not decide the issue presented in the petition for a writ of habeas corpus and express no view as to the propriety of the trial court's or the Appellate Court's reasoning.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to remand the case to the trial court with direction to dismiss the petition for a writ of habeas corpus.

BERDON, J., dissenting. I would affirm the well reasoned decisions of both the Appellate Court and the trial court, which held that the respondent, the commissioner of correction (hereinafter, the state), pursuant to General Statutes § 18-98d,[1] should have examined

---

[1] General Statutes § 18-98d provides: "(a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for

and credited the pretrial confinement time of the petitioner, Alphonso Valle, under each of his two convictions—for which he received two sentences to be served concurrently, notwithstanding the fact that he was sentenced on different dates for each conviction—and that the state then should have chosen, as the effective release date, the date on which the longer of the two sentences would be completed. *Valle* v. *Commissioner of Correction*, 45 Conn. App. 566, 570, 696 A.2d 1280 (1997).

The majority instead reverses the judgment of the Appellate Court and remands the case to that court with direction to remand the case to the trial court with direction to dismiss the petition for a writ of habeas corpus filed by the petitioner. The majority does so because, while the state's appeal from the judgment of the habeas court in favor of the petitioner was pending, the petitioner failed to return from leave from a halfway house while he was in the custody of the state. The

whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine each day spent in such confinement prior to sentencing shall be credited against the sentence at the rate of ten dollars.

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) in excess of the sentence actually imposed."

state nonetheless urges this court to reach the merits of its appeal because of the vital interest to the state in determining the calculation of credits for prison sentences of more than 2000 other prisoners.[2]

I recognize that dismissal is an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process. *Estelle* v. *Dorrough*, 420 U.S. 534, 537, 95 S. Ct. 1173, 43 L. Ed. 2d 377 (1975) ("[d]isposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law"). But this disentitlement doctrine is not a hard and fast rule, and should be applied only when the reasons underlying the doctrine are well served. The following reasons have been given in support of the doctrine: (1) "the judgment on review may be impossible to enforce" because the prisoner has escaped, (2) the prisoner's "escape disentitles him to call upon the resources of the Court for determination of his claims," (3) dismissal will "[discourage] the felony of escape and [encourage] voluntary surrenders," and (4) dismissal will "[promote] the efficient, dignified operation of the courts." (Internal quotation marks omitted.) *Degen* v. *United States*, 517 U.S. 820, 824, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996).

The first reason, that our judgment may be impossible to enforce, may well be applicable to the petitioner's case, but our decision would establish a rule of law that has significance and application to 2000 other prisoners. The second reason is not applicable to the present case because it is the state that appealed from the judgment of the habeas court and then to this court. Although the dismissal may discourage escape from confinement, this third reason pales in light of the fact that the issue

---

[2] At oral argument before this court, the state represented in good faith that the best estimate was at least 2000 other prisoners' sentences could be affected by the merits of this appeal.

raised in this case has great significance to the state. Finally, dismissing the petition for a writ of habeas corpus does not "[promote] the efficient, dignified operation of the courts." Id. In fact, the dismissal results in the waste of resources expended by the judiciary, the attorney general and the public defender to appeal this case on an issue everyone agrees must be resolved, not necessarily for the petitioner in this case, but for the state and the 2000 other prisoners that may be affected.

In the recent case of *State* v. *Patterson*, 236 Conn. 561, 674 A.2d 416 (1996), in which the appellant defendant had fled the jurisdiction while the state's petition for certification to appeal was pending before this court, we reviewed the Appellate Court's judgment on appeal by the state that a criminal defendant had a constitutional right to a presentence investigation report. *State* v. *Patterson*, 37 Conn. App. 801, 820, 658 A.2d 121 (1995). In *Patterson*, we allowed the defendant's counsel to withdraw because the defendant had escaped,[3] we granted the Connecticut Criminal Defense Lawyer Association's permission to appear as amicus, and we then decided the issue "because of the substantial public interest at stake . . . ." *State* v. *Patterson*, supra, 236 Conn. 566. In the present case, the petitioner had sought review of an issue in the habeas court that is equally as important as the claim raised by the fugitive appellant in *Patterson*. Moreover, in this case it is the state's appeal and in urging this court to decide it, notwithstanding the absence of the petitioner, the state expressed at oral argument that there was a substantial public interest in resolving the issue of how to calculate good time and jail credits.

[3] In the present case, the public defender, who did not seek permission to withdraw as the petitioner's appellate counsel, urges that we decide the issue, as the Appellate Court did, notwithstanding the fact that the petitioner was also absent during that appeal.

Indeed, because the state presently calculates those credits in a manner adversely to prisoners, contrary to that directed by the trial court and the Appellate Court in this case, prisoners who would have been released, had we affirmed those courts, are being held wrongfully. Common decency and concern for the liberty rights of those prisoners requires that we do what we did for the state in *Patterson*—decide the issue. Therefore, I conclude, as the United States Supreme Court did in *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 244, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993), that, under the circumstances of this case, the application of this disentitlement doctrine does not "represent [a] reasoned [exercise] of [this] court's authority."

Accordingly, I dissent.