Merrimack
No. 2007-446

THE STATE OF NEW HAMPSHIRE

v.

GREGORY A. GAYLOR

Argued: October 15, 2008
Opinion Issued: January 9, 2009

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief), for the State.

Gregory A. Gaylor, by brief, *pro se*, and *Richard E. Samdperil*, of Exeter, orally, for the defendant.

BRODERICK, C.J. The question before us is whether the defendant's appeal, dismissed pursuant to the fugitive disentitlement rule, should be reinstated. We conclude that it should not.

In December 1997, the defendant, Gregory Gaylor, was indicted in Merrimack County Superior Court on multiple theft counts and one count of willful evasion of the New Hampshire business profits tax arising out of his involvement in a business partnership. While the jury was deliberating at his trial in April 1999, the defendant absconded. He was found guilty on more than 100 counts of theft and tax evasion and was sentenced *in absentia* to fourteen and one-half to twenty-nine years in state prison and ordered to pay restitution of almost $800,000.

In July, while the defendant was a fugitive from justice, his attorneys filed a notice of appeal on his behalf. *See State v. Gaylor*, no. 99-452 (N.H. 1999). We dismissed the appeal in mid-October because of the defendant's fugitive status. In November, the defendant was arrested in Switzerland. He was extradited to New Hampshire in August 2000, where he began serving his sentences. His total period of confinement was reduced in May 2006 to a minimum of eleven and a maximum of twenty-two years. This occurred because one of his consecutive sentences involved a charge for which he could not have been extradited.

In April 2001, the defendant filed a motion in this court requesting reconsideration of our October 1999 order dismissing his appeal. We denied the motion without prejudice to his ability to seek relief by filing a petition for writ of habeas corpus. The defendant also filed a motion to set aside our October 1999 order, which we denied.

In July 2007, the defendant filed the instant appeal, alleging nine errors relating to his 1999 convictions and associated sentences. We directed the defendant to submit a memorandum addressing whether his appeal was untimely or barred by previous orders. In doing so, the defendant argued, among other things, that his actual innocence required us to accept the appeal and that it was not untimely because his sentence was amended in

June 2007. He subsequently filed a supplemental memorandum arguing the dismissal of his July 1999 appeal should not foreclose appellate review of his case and that extraordinary circumstances, *i.e.*, his knowledge of an alleged conspiracy between a company called Euromed, a Nevada law firm, the New Hampshire Attorney General's office, and covert American intelligence activity, justified his flight to Switzerland.

On January 10, 2008, we ordered briefing on the following issues: (1) whether the defendant should be permitted to reinstate his 1999 appeal in light of his claims of insufficient evidence and actual innocence; (2) whether the July 2007 appeal was untimely filed; and (3) whether the July 2007 appeal was barred in light of our October 1999 order dismissing the defendant's 1999 appeal.

I

■ In existence for over a century, the fugitive disentitlement rule allows a court to "dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993); *see also Estelle v. Dorrough*, 420 U.S. 534, 537 (1975) (*per curiam*) (upholding Texas statute providing for automatic dismissal of appeals where defendant escaped during pendency of appeal and did not return within ten days); *Eisler v. United States*, 338 U.S. 189, 190 (1949) (*per curiam*) (removing case from docket when petitioner fled country after submission of case on merits); *Smith v. United States*, 94 U.S. 97, 98 (1876) (removing case from docket when petitioner escaped from custody). The rule is based "in part on a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment." *Ortega-Rodriguez*, 507 U.S. at 240. Several rationales underlie the rule, including concerns about the enforceability of an appellate court's judgment against a fugitive, *Smith*, 94 U.S. at 97, a desire to promote the efficient operation of the appellate process and the dignity of the appellate court, *Estelle*, 420 U.S. at 537, and a belief that the rule serves an important deterrent function. *Ortega-Rodriguez*, 507 U.S. at 242.

■ Relying upon *United States v. Puzzanghera*, 820 F.2d 25 (1st Cir. 1987), *cert. denied*, 484 U.S. 900 (1987), we adopted the fugitive disentitlement rule in *State v. Patten*, 134 N.H. 319 (1991), stating that "when a defendant escapes from confinement and remains a fugitive from justice, he or she has forfeited the right to appellate review." *Id.* at 321. Consequently, when the government establishes by affidavit the fact of a defendant's voluntary escape, the appeal may be dismissed. *Id.* "Escape, pursuit, and recapture . . . put the government and the taxpayers to considerable expense," and by escaping, "[the defendant] has demonstrated

his contempt for the justice system." *Puzzanghera*, 820 F.2d at 26. Dismissal under the fugitive disentitlement doctrine "w[ould] ordinarily be with prejudice," except for "very unusual cases where equities pertaining to the . . . merits of the appeal . . . could induce [the court] to retain jurisdiction," for example, where the defendant is returned to custody before the appeal has been dismissed. *Id.* at 26-27; *see Patten*, 134 N.H. at 321-22.

The defendant argues that we should reinstate his 1999 appeal based upon his claims of insufficient evidence and actual innocence, citing *Commonwealth v. Hurley*, 461 N.E.2d 754 (Mass. 1984) (*Hurley II*), for support. In *Hurley II*, the Massachusetts Supreme Judicial Court, while noting that "a motion to reinstate an appeal is an extraordinary request and should not be granted lightly," held that "once a defendant returns to our jurisdiction and control, voluntarily or forcibly, . . . it is within the inherent discretion of this court to reinstate the defendant's appeal." *Id.* at 756. The facts in *Hurley II*, however, differ significantly from those presented by the case before us.

Defendant Hurley was convicted of first degree murder. *See Com. v. Cobb*, 405 N.E.2d 97, 98 (Mass. 1980), *vacated sub nom. Massachusetts v. Hurley*, 449 U.S. 809 (1980). On appeal the Supreme Judicial Court held that he was entitled to a new trial based upon the ineffective assistance of counsel because a genuine conflict of interest resulted from an attorney's representation of both the defendant and a prosecution witness who was an alleged accomplice to the murder. *Id.* at 99. The defendant was admitted to bail.

Subsequently, the United States Supreme Court vacated the judgment and remanded the case for the court to reconsider its ruling in light of *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *See Massachusetts v. Hurley*, 449 U.S. at 809.

In *Cuyler*, the Supreme Court held that in order to establish a denial of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance," and that the "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 348-50.

Following the Supreme Court's decision, the Commonwealth moved to revoke the defendant's bail and when he failed to appear at the hearing, the court dismissed his appeal. *Com. v. Hurley*, 414 N.E.2d 1006, 1006 (Mass. 1981) (*Hurley I*). Following the defendant's return to custody approximately seven months later, the court reconsidered its earlier dismissal. *Hurley II*, 461 N.E.2d at 755. The court reasoned that the effective assistance of counsel guaranteed by Part I, Article 12 of the Massachusetts

Constitution provided greater safeguards than the Sixth Amendment to the United States Constitution and, therefore, since Hurley "has already demonstrated that a genuine conflict of interest existed, he need not be required to prove an adverse effect on his trial counsel's performance." *Id.* at 757. Considering the whole case the court found it apparent that the defendant's claim on appeal was meritorious and that "a miscarriage of justice occurred." *Id.* Accordingly, based upon the court's "extraordinary powers on review of capital cases" and in "the interests of justice" it concluded that the defendant should be granted a new trial to address the State constitutional claims, provided that the Commonwealth could make no showing that its case had been prejudiced by the defendant's flight. *Id.* at 757-58.

We note that the *Hurley II* court's decision regarding reinstatement has not been cited with approval either in Massachusetts or elsewhere and appears to represent a minority view. In contrast, many states, if not the majority, have adopted a rule that any unauthorized absence from custody automatically forfeits a criminal defendant's right to appeal. *See generally* Annotation, *Effect of Escape By, or Fugitive Status of, State Criminal Defendant on Availability of Appeal or Other Post-Verdict or Post-Conviction Relief — State Cases,* 105 A.L.R. 5TH 529 (2003 & Supp. 2008).

In the case before us, over the past eight years the defendant has filed numerous pleadings in federal court and New Hampshire state courts challenging his conviction, sentences and extradition. For example, in 2003, the Merrimack County Superior Court rejected the defendant's claim of actual innocence in conjunction with a petition for writ of habeas corpus claiming ineffective assistance of counsel. In 2006, the United States District Court for the District of New Hampshire rejected the defendant's claim of actual innocence raised in a habeas corpus petition challenging his state court convictions. The court ruled that the defendant "has failed to produce any new reliable evidence that supports his actual innocence claim." In 2008, the Merrimack County Superior Court considered the defendant's claim of actual innocence raised in his motion for a new trial. In denying the motion, the court stated, "The bottom line is, [the defendant] has made the same claims of newly discovered evidence or actual innocence in the numerous legal proceedings that he has initiated in various courts since his conviction in 1999. He continues to raise issues that have previously been argued and unaccepted for one legal reason or another. Over the years [the defendant] has written one long song. While the lyrics are the same, each has a different melody. None warrant the relief requested."

■ The defendant remained a fugitive from justice for approximately seven months and almost nine years have passed since we dismissed his initial appeal in 1999. The claims he now makes could have and should have been the subject of his timely appeal following his trial. Under the circumstances presented, we see no reason to depart from the rule established in *Patten*. *See Estelle*, 420 U.S. at 542 (dismissal warranted when escaped convict is at large during ongoing appellate process); *Allen v. Georgia*, 166 U.S. 138, 140-41 (1897) (upholding state court's dismissal of appeal of escaped prisoner and refusal to reinstate appeal against constitutional due process attack).

Because the defendant elected to absent himself from the jurisdiction during the period of appeal, he forfeited the right to appellate review. *See Molinaro v. New Jersey*, 396 U.S. 365 (1970) (*per curiam*) ("[E]scape . . . disentitles the defendant to call upon the resources of the Court for determination of his claims."); *cf. State v. Brenes*, 151 N.H. 11, 12 (2004) (holding destruction of trial transcript pursuant to court rule ten years after defendant's escape disadvantaged defendant due to his own culpable misconduct). There are no "equities pertaining to the merits of the [defendant's] appeal" to persuade us to reinstate it. *Patten*, 134 N.H. at 321.

## II

The defendant next argues that his appeal is timely because it was filed "within thirty days from the June 1, 2007 clerk's written notice of amendment of the sentences." We reject this argument for two reasons.

First, the sentence amendment, which the defendant refers to as taking place in June 2007, actually occurred in May 2006. The State filed a proposed order to amend the defendant's original sentence on the tax evasion charge because it concluded that pursuant to Article 16 of the United States-Switzerland Extradition Treaty, the State could not impose the sentence as Switzerland had refused extradition on that charge. On May 12, 2006, the Merrimack County Superior Court granted the State's proposed order, of which the defendant received notice on May 17, 2006. Thus, any appellate rights the defendant may have had arising out of that order expired over a year before the filing of the appeal before us. *See* SUP. CT. R. 7.

Second, on May 31, 2007, the defendant filed a notice of mandatory appeal with this court, appealing the denial of a motion to vacate a prior sentencing order. Noting that Supreme Court Rule 3 excepts from the definition of "mandatory appeal" an appeal from, among other things, a final decision on the merits issued in a collateral challenge to any conviction or sentence, an appeal from a final decision on the merits issued in a sentence modification or suspension proceeding, and an appeal from a final

decision on the merits issued in an imposition of sentence proceeding, we ordered the defendant to either refile his appeal on a notice of discretionary appeal form or file a brief memorandum in support of his contention that his appeal was mandatory. On July 12, 2007, we concluded that it was not a mandatory appeal and declined it. *See State v. Gaylor*, no. 2007-375 (N.H. July 12, 2007). Similarly, we conclude that the appeal regarding his 2006 sentence amendment is discretionary and we decline to accept it. *See* SUP. CT. R. 7(1)(B).

> *Reinstatement of appeal in docket no. 99-452 is denied; remaining issues in docket no. 2007-446 are declined.*

DALIANIS and HICKS, JJ., concurred.