# STATE OF CONNECTICUT *v.* WALLACE BRABHAM
## (SC 18704)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued February 16—officially released July 12, 2011

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *John Smriga*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Wallace Brabham, appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of burglary in the third degree in violation of General Statutes § 53a-103, and one count of attempt to commit larceny in the first degree in violation of General Statutes § 53a-49 and General Statutes (Rev. to 1999) § 53a-122. The dispositive issue in the present appeal is whether the defendant's appeal is barred under the common-law rule of fugitive disentitlement when the defendant fled Connecticut after his conviction but subsequently was found and rearrested. We conclude that all of the defendant's claims are barred by that rule, and, accordingly, we dismiss the defendant's appeal.

The record reveals the following facts and procedural history. On April 27, 1999, an architect went to his place of business, where he encountered the defendant in the drafting room. Upon being discovered, the defendant fled from the office. A police officer who responded to the scene found that two computers had been unplugged, and that their keyboards had been wrapped in their own wires and placed in a garbage can. The defendant was subsequently charged with the crimes of which he was ultimately convicted. Thereafter, the defendant failed to appear for an August 10, 2000 court date and was rearrested. On August 22, 2000, following

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

a trial, the jury returned a verdict of guilty and the trial court subsequently rendered the judgment of conviction from which the defendant now appeals. After the jury returned its verdict, but before sentencing, the defendant posted bond and fled to London, England. As a result, the defendant failed to appear for sentencing on September 22, 2000. He later was rearrested and returned to Connecticut. The defendant's sentencing was set for March 26, 2004, but before that date, he once again posted bond and fled to London, England, and again, did not appear for sentencing. The defendant again was rearrested, and on November 18, 2008, he was sentenced to a total effective sentence of fifteen years imprisonment. This appeal followed.

On appeal, the defendant claims that: (1) the evidence introduced at trial was insufficient to establish that the computers he attempted to steal had a value of more than $10,000; (2) the trial court improperly failed to provide a cautionary instruction about identifications to the jury; (3) the trial court improperly denied the defendant's motion for a mistrial because irrelevant evidence related to witness identification was admitted at trial; (4) the trial court improperly allowed the state to cross-examine the defendant's alibi witnesses without laying a proper foundation; and (5) the defendant is entitled to a new trial because the photographic arrays used during the investigation, which are relevant to his second and third claims, have been lost, thereby prejudicing his right to meaningful appeal. The state contends that the entire appeal should be dismissed under the common-law fugitive felon disentitlement doctrine,[2] which allows an appellate court to dismiss the appeal of a party who flees subsequent to the felony conviction from which he appeals. See J. Joseph, "The

---

[2] The fugitive felon disentitlement doctrine is also known as the fugitive dismissal doctrine, the fugitive disentitlement doctrine, and the disentitlement doctrine.

Fugitive Dismissal Rule Applied to Pre-Appeal Fugitivity," 84 J. Crim. L. & Criminology 1086, 1087 (1994). We agree with the state and, accordingly, we dismiss the defendant's appeal.

As a preliminary matter, the defendant argues that the state's request to have his appeal dismissed is not timely, and that we should deny it on that ground. We disagree. The defendant relies on Practice Book § 66-8, which provides in relevant part: "Any claim that an appeal or writ of error should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal or writ . . . within ten days after the filing of the appeal . . . ." We conclude that this provision does not apply to a claim that an appeal should be dismissed under the fugitive felon disentitlement doctrine because the requested dismissal is not based on a jurisdictional defect, or due to the defendant's failure to file papers. A defect is a "want or absence of some legal requisite; deficiency; imperfection; insufficiency"; Black's Law Dictionary (4th Ed. 1968) p. 506; and generally refers to a shortcoming in the form or content of a filing. See, e.g., *DiLieto v. County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 147–48, 998 A.2d 730 (2010) (describing as "defect" improperly named plaintiff in pleading). The state has not alleged any such procedural shortcoming in the present case but, instead, advances a substantive legal argument in support of its position that the claim is untimely. Accordingly, the state's claim that the appeal should be dismissed under the fugitive felon disentitlement doctrine is not within the ambit of Practice Book § 66-8 and is, therefore, timely.

We begin with a brief examination of the fugitive felon disentitlement doctrine, which is a common-law rule that permits, but does not require, appellate courts to dismiss appeals by fugitive defendants in certain

circumstances. See, e.g., *Degen* v. *United States*, 517 U.S. 820, 824, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996) (recognizing courts' "authority to dismiss an appeal or writ of certiorari if the party seeking relief is a fugitive"); *Estelle* v. *Dorrough*, 420 U.S. 534, 537, 95 S. Ct. 1173, 43 L. Ed. 2d 377 (1975) (discussing propriety of prior decisions "declining to review convictions" of fugitive felons in decision dismissing appeal by former fugitive restored to custody by time of appeal); *Valle* v. *Commissioner of Correction*, 244 Conn. 634, 638, 711 A.2d 722 (1998) (*Berdon, J.*, dissenting) ("[fugitive felon] disentitlement doctrine is not a hard and fast rule, and should be applied only" in certain circumstances); *State* v. *Leslie*, 166 Conn. 393, 395, 349 A.2d 843 (1974) (while flight "does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the [c]ourt for determination of his claims" [internal quotation marks omitted]), quoting *Molinaro* v. *New Jersey*, 396 U.S. 365, 366, 90 S. Ct. 498, 24 L. Ed. 2d 586 (1970).

Our review has revealed that there is not a universal approach to the fugitive felon disentitlement doctrine. Some jurisdictions allow discretionary dismissal of an appeal only when the defendant remains at large when the appeal is heard. See, e.g., *State* v. *Gaylor*, 158 N.H. 230, 235, 969 A.2d 333 (2009); *Ortiz* v. *State*, 862 S.W.2d 170, 173 (Tex. App. 1993).

Other jurisdictions apply the fugitive felon disentitlement doctrine more broadly, also allowing under certain circumstances dismissal of appeals by former fugitives who have been returned to custody. See, e.g., *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 249, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993) ("[W]hile dismissal of an appeal pending while the defendant is a fugitive may serve substantial interests, the same interests do not support a rule of dismissal for all appeals filed by former fugitives, returned to custody before

invocation of the appellate system. Absent some connection between a defendant's fugitive status and his appeal, as provided when a defendant is at large during the ongoing appellate process . . . the justifications advanced for dismissal of fugitives' pending appeals generally will not apply. We do not ignore the possibility that some actions by a defendant, though they occur while his case is before the [trial] court, might have an impact on the appellate process sufficient to warrant an appellate sanction. For that reason, we do not hold that [an appellate court] is entirely without authority to dismiss an appeal because of fugitive status predating the appeal." [Citation omitted; internal quotation marks omitted.]); *State* v. *Verikokides*, 925 P.2d 1255, 1257 (Utah 1996) (dismissing appeal under fugitive felon disentitlement doctrine, where defendant had been restored to custody at time of appeal, but trial transcript had been lost during seven year flight).[3]

This court has dismissed appeals under the fugitive felon disentitlement doctrine on only three prior occasions. See *Valle* v. *Commissioner of Correction*, supra, 244 Conn. 636; *State* v. *Patterson*, 236 Conn. 561, 581, 674 A.2d 416 (1996); *State* v. *Leslie*, supra, 166 Conn. 395. Both *Valle* and *Leslie* were brief per curiam opinions dismissing under the fugitive felon disentitlement doctrine the appeals of defendants who, at the time of oral argument, were "still . . . fugitive[s] whose whereabouts are unknown . . . ." *State* v. *Leslie*, supra, 394.

---

[3] Several jurisdictions do not allow dismissal under the fugitive felon disentitlement doctrine. See, e.g., *State* v. *Falcone*, 383 So. 2d 1243, 1246–47 (La. 1980). We are aware of no Connecticut statute that would bar or limit our discretion to dismiss appeals under the fugitive felon disentitlement doctrine, and the defendant does not argue that the Connecticut constitution in any way precludes appellate courts from dismissing an appeal under the doctrine. It would be inconsistent with the valid justifications for the fugitive felon disentitlement doctrine to prohibit all dismissals under the doctrine, and, accordingly, we decline to adopt such an approach in Connecticut.

*Patterson* similarly concerned a defendant who remained at large when the appeal was argued before this court. *State* v. *Patterson*, supra, 236 Conn. 566. In *Patterson*, the state appealed from the Appellate Court's reversal of the defendant's conviction of drug-related charges. That reversal was based, in its entirety, on the Appellate Court's conclusion that the defendant was entitled, under the United States constitution, to a presentence investigation report. Id., 563–64. The state appealed, and despite the fact that the defendant was a fugitive at the time of argument before this court, we nevertheless addressed the constitutional issue, recognizing "the substantial public interest at stake" in the case. Id., 566. This court ultimately determined that the Appellate Court's conclusion that the defendant's constitutional rights had been violated was improper and, accordingly, reversed the judgment. Id., 568. We further noted that, although we ordinarily would remand such a case to the Appellate Court for consideration of the defendant's remaining claims, the defendant had disentitled himself to the benefit of appellate review when he fled the jurisdiction. Id., 581.

Accordingly, while we do not write on a blank slate when considering the state's principal claim, the current appeal presents us with our first opportunity to consider the scope and operation of Connecticut's fugitive felon disentitlement doctrine when the defendant has fled subsequent to conviction but has been returned to custody by the time of appeal. This issue presents a question of law over which we exercise plenary review. *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631, 6 A.3d 60 (2010).

The various rationales that have been put forth in support of the fugitive felon disentitlement doctrine include: "(1) the judgment on review may be impossible to enforce because the prisoner has escaped, (2) the prisoner's escape disentitles him to call upon the

resources of the [c]ourt for determination of his claims, (3) dismissal will [discourage] the felony of escape and [encourage] voluntary surrenders, and (4) dismissal will [promote] the efficient, dignified operation of the courts." (Internal quotation marks omitted.) *Valle* v. *Commissioner of Correction*, supra, 244 Conn. 638 (*Berdon, J.*, dissenting). In addition to these reasons, courts, especially when considering appeals by fugitives who have been returned to custody by the time of the appeal, have referred to the need for the dignified and efficient operation of the *appellate process* specifically, rather than of courts as a whole. See *Ortega-Rodriguez* v. *United States*, supra, 507 U.S. 242; *Estelle* v. *Dorrough*, supra, 420 U.S. 537.

While all of the articulated rationales support the dismissal of appeals when a defendant remains at large, only some support the adoption of a rule allowing for dismissal when the defendant has been restored to custody when his appeal is heard. Because concern about the enforceability of a judgment is not an issue when the defendant is in custody, this rationale is inapplicable and need not be considered. The rationale that a defendant's escape disentitles him from calling upon this court to settle his claims is triggered at the point of his escape because it is, in effect, a sanction for his conduct. Accordingly, events following that escape do not remedy that initial disentitlement. Finally, voluntary surrenders may actually be discouraged by the adoption of a rule that allows dismissal when a fugitive has been restored to custody—specifically, if a fugitive believes his appeal may be dismissed even if he surrenders, he may be discouraged from surrendering.[4] On the other hand, by increasing the number of cases where fugi-

[4] In the present case, the defendant fled twice subsequent to conviction, and there is no indication in the record, nor has he claimed, that he returned voluntarily on either occasion.

tives' appeals can be dismissed, such a rule may more effectively deter escapes in the first place.[5]

Because none of the first three rationales provide much guidance for determining whether an appeal should be dismissed when a former fugitive has been restored to custody, we turn to the fourth rationale, which is the promotion and protection of the dignified and efficient operation of the appellate system. In many cases, allowing the appeal of a formerly fugitive defendant who has been restored to custody would wholly undermine the efficiency and dignity of the appellate court. This is particularly true where, as here, the defendant fled for an extended period, during which time the record or exhibits from his original trial have become damaged or lost. In such cases, an appellate court may be simply unable to subject certain types of claims to full and fair review. See, e.g., *State* v. *Goree*, 11 Neb. App. 685, 691, 659 N.W.2d 344 (2003) (loss of records caused by delay from escape prejudicial to operation of appellate court). Similarly, if a formerly fugitive defendant sought a new trial on appeal, but witnesses from his original trial had become unavailable during his absconder, allowing the appeal would undermine the dignity and operation of both the appellate and trial process if a remand had to be ordered. See, e.g., *Hires* v. *State*, 882 So. 2d 225, 228 (Miss. 2004) (delay caused by defendant's flight undermined appeal by prejudicing state's ability to locate witnesses and present evidence in event of retrial).

Based on the foregoing considerations, we hold that an appeal may be dismissed in cases where the defendant has been returned to custody when his appeal

---

[5] Whether adopting a rule that permits dismissal when a defendant has been restored to custody by the time his appeal is heard will discourage escapes or encourage surrenders is wholly speculative, and we therefore decline to rely on the possible effects of such a rule. We conclude that this rationale does not favor either approach.

is heard, but his flight has undermined the integrity, efficiency or dignity of the appellate process, including the potential remedies in the event of a successful appeal. Such an approach to the fugitive felon disentitlement doctrine best serves all of the purposes of the doctrine, and allows appellate courts to ensure that a defendant does "not reap the benefit of his fugitive status"; *State* v. *Goree,* supra, 11 Neb. App. 691; by gaining unfair advantages due to the passage of time at the expense of the integrity of the appellate process.

We now turn to the question of whether the defendant's flight in the present case has undermined the integrity, dignity and efficiency of the appellate process. To resolve that question, we first must determine whether the state should bear the burden of demonstrating that the defendant has undermined the appellate process, or whether the defendant should bear the burden of demonstrating that his flight was harmless to the appellate process.[6]

It is axiomatic that a formerly fugitive defendant is responsible for the consequences caused by his flight. Consequently, we conclude that it is appropriate for the defendant to bear the burden of proving that his flight, and its attendant consequences,[7] did not prejudice the appellate process. We note that criminal defendants sometimes bear the burden of proving prejudice even when the potentially prejudicial conduct was undertaken by the state. See, e.g., *State* v. *Sewell,* 95 Conn. App. 815, 823, 898 A.2d 828 (defendant bears burden of showing prejudice caused by state's failure

---

[6] There is no agreement among other jurisdictions on how best to allocate the burden of proof in this context, and we have not encountered any extensive analysis by another jurisdiction regarding this question.

[7] While we resolve the present case on the basis of the specific prejudicial effects of certain consequences of the defendant's flight, we leave open the possibility that the appellate process in other cases could be prejudiced solely by virtue of an extended delay caused by the defendant's flight.

to disclose materials), cert. denied, 280 Conn. 905, 907 A.2d 94 (2006). As a practical matter, however, it would be unreasonable, and perhaps impossible, to require the defendant to anticipate and disprove all potential theories of prejudice by the state. Accordingly, we conclude that when the state seeks to dismiss an appeal by a defendant who is in custody pursuant to the fugitive felon disentitlement doctrine, the state must allege specific instances of prejudice caused by the defendant's flight. Once those allegations have been made, however, the burden of proof shifts to the defendant to show that his flight was not prejudicial to the appellate process. See, e.g., *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 457, 844 A.2d 836 (2004) (after plaintiff makes certain allegations of fiduciary breach, "the burden of proof shifts to the fiduciary" to prove fair dealing). The defendant must disprove the alleged prejudicial effect of his flight by a preponderance of the evidence. See, e.g., *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 672–73, 949 A.2d 1203 (2008) (setting preponderance of evidence as burden to prove or disprove prejudice).

In the present case, we conclude that the state has properly alleged prejudice, and that the defendant, on the basis of the undisputed facts, cannot disprove prejudice. The appellate process has been prejudiced by the loss of trial exhibits and by the effect that the passage of time has had on the availability and reliability of witnesses. The defendant does not and cannot dispute that a significant amount of time has passed, or that trial exhibits have been lost. Trial exhibits are an essential element of the record for an appellate court's review, and their loss, in the absence of adequate reconstruction, necessarily undermines the integrity of this court's operation in an appeal. While the state has not claimed that the defendant's flight was the sole cause of the loss of these exhibits, we are persuaded that delay from

an escape "may be anticipated to cause lost items . . . ."[8] *State* v. *Goree*, supra, 11 Neb. App. 691. Under the construction of the fugitive felon disentitlement doctrine that we adopt today, we conclude that the state has shown, by a preponderance of the evidence, that the delay caused by the defendant's flight has undermined the integrity of the appellate process.

Finally, the defendant claims that, because he would not receive a new trial if he were to prevail on his claim regarding the insufficiency of the state's evidence, any prejudice to the state's ability to retry the case is not relevant to that specific claim. We are not persuaded because in this case, the loss of trial exhibits has prejudiced this court's ability to accurately and fully consider the defendant's challenge to the sufficiency of the state's evidence. Specifically, the defendant claims that the state failed to introduce evidence sufficient to prove the market value or replacement cost of the computers at the time the crime was committed. At trial, in addition to testimony about the value of the computers, the state introduced as exhibits, inter alia: (1) a credit card statement evidencing the purchase of the computers; (2) an invoice from the hardware supplier who sold the computers; and (3) an invoice from the software company that installed software with a significant value on the computers. All three exhibits were lost while the defendant was a fugitive. Approximately nine years after the defendant's conviction, during the course of this appeal, the defendant moved to rectify the record.

---

[8] If this court were to order a new trial, the effect of the passage of time on the memories of witnesses could not be wholly cured, as the defendant suggests, by refreshing witnesses' recollections with their former testimony, or by simply admitting that former testimony. See *State* v. *Troupe*, 891 S.W.2d 808, 811 (Mo. 1995) (faded witness memories as result of time subjects "them to impeachment and consequent diminished credibility"). Furthermore, reliance on former testimony would limit the scope of a potential witness' testimony to the same material as his previous testimony, further prejudicing the state.

At the ensuing hearing, the trial court, over the defendant's objection, entered as court's exhibits, copies of the credit card statement and the invoice from the hardware supplier. There is no replacement exhibit for the invoice from the software company. Without that document, we cannot review all of the evidence considered by the jury, and accordingly, we cannot subject the defendant's claim to proper review. See *State* v. *Nelson*, 118 Conn. App. 831, 847, 986 A.2d 311 (when considering claims of insufficient evidence, reviewing court must consider "the evidence [from trial and] . . . determine whether upon the facts . . . and the inferences reasonably drawn therefrom," jury could have properly reached its verdict [internal quotation marks omitted]), cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).[9]

The loss of the trial exhibits, without adequate replacements, prejudices the operation of this appeal with regard to all of the defendant's claims, including his claim regarding the insufficiency of the state's evidence. Accordingly, we decline to adjudicate the present case and conclude that the defendant's appeal should be dismissed in its entirety.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[9] While we leave open the possibility that an insufficiency claim in an appeal could be unaffected by the delay caused by escape, we do not face such a situation in the present case.