**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 36 EAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on April 27, 2017 at No. |
| | : | 657 EDA 2015 affirming the Judgment |
| v. | : | of Sentence entered on January 30, |
| | : | 2015 in the Court of Common Pleas |
| | : | of Philadelphia County, Criminal |
| FRANK ADAMS, | : | Division, at No. CP-51-CR-0006821- |
| | : | 2012. |
| Appellant | : | |
| | : | ARGUED: September 26, 2018 |


**OPINION**


**JUSTICE TODD**                                        **DECIDED:  January 23, 2019**

In this appeal by allowance, we consider whether a defendant's fugitive status during the period for filing a notice of appeal – where his attorney filed a timely notice of appeal on his behalf and he later returned after the appeal period ended, but prior to the deadline for filing an appellate brief – results in the defendant forfeiting his right to appeal. For the reasons explained below, we affirm the order of the Superior Court which found a defendant fugitive's right to appeal to be forfeited in these circumstances.

On May 20, 2012, Appellant Frank Adams and his brother, Nicky Adams, were involved in an altercation with another man outside a Philadelphia church; the altercation was eventually broken up by members of the church. The victim went to his car, and was about to leave the scene for home, when Appellant went to his own vehicle, pulled out a tire iron, handed the weapon to his brother, and directed him to strike the victim.

Appellant's brother proceeded to the victim's vehicle, and, as the victim leaned out the window to protect his infant nephew who was inside the automobile, Appellant's brother swung the tire iron like a bat against the victim's head, causing a laceration of his scalp. Appellant was arrested and charged with, *inter alia*, aggravated assault, conspiracy, and recklessly endangering another person.

Appellant was released on bail, but he and his brother failed to appear for his January 9, 2013 trial date in the Philadelphia County Court of Common Pleas. Over nine months later, after having fled to California, Appellant and his brother were brought before the trial judge, who held them in contempt, sentenced them to two weeks imprisonment for that offense, and stressed to them the importance of their obligation to appear for court dates. Appellant and his brother were again released on bail. A trial date was set. This date was critical, as the principal witnesses against Appellant and his brother were to move to Florida within days of the trial. The brothers appeared for court that morning, but, thereafter, left without authorization. While Appellant claimed that his brother had experienced chest pains, there was no corroboration of this exigency, and Appellant ignored his attorney's instructions to return to court. The trial judge deemed Appellant to be willfully absent.

The trial proceeded *in absentia*, and, after four days of hearing, Appellant was convicted of various crimes.[1] Thereafter, when Appellant failed to appear for his sentencing hearing, he was sentenced, *in absentia*, to a term of 10 to 20 years incarceration. Appellant remained a fugitive throughout the time for seeking appellate review; however, on March 16, 2016, his attorney filed a notice of appeal within the appeal period on Appellant's behalf, and the trial court directed him to file a Pa.R.A.P. 1925(b)

---

[1] Appellant was convicted of aggravated assault, 18 Pa.C.S. § 2701(a)(1); simple assault, *id*. § 2702(a)(1); recklessly endangering another person, *id*. § 2705; and two counts of conspiracy (aggravated assault and simple assault), *id*. § 903.

statement. Appellant's attorney raised several assertions of error, including a challenge to the legality of the sentence. The trial court rejected the claims, reasoning that Appellant's fugitive status caused him to forfeit all issues on appeal. Given that Appellant failed to appear for the entirety of his trial as well as his sentencing hearing, and given that he was a fugitive during the entire 30-day appeal period, the trial court found it of no consequence that Appellant's counsel had filed a notice of appeal during the appeal period.

After the 30-day appeal period had expired, but prior to the deadline for the filing of Appellant's brief, Appellant was rearrested and returned to custody. Appellant filed an appellate brief, arguing, *inter alia*, that his fugitive status should not cause him to forfeit his right to appeal. Appellant stressed that his absence had not frustrated the appellate process, and he reasserted his substantive claims, including his challenge to the legality of his sentence.

On appeal, a three-judge panel of the Superior Court affirmed in a unanimous, unpublished memorandum opinion authored by Judge Paula Francisco Ott. *Commonwealth v. Adams*, 657 EDA 2015 (Pa. Super. filed Apr. 27, 2017). The court reviewed various decisions, beginning with this Court's decision in *Commonwealth v. Passaro*, 476 A.2d 346 (Pa. 1984), in which we found that the "fugitive forfeiture rule" manifests, *inter alia*, the belief that a defendant who decides to bypass orderly criminal procedures should not be permitted to seek relief under those procedures, and is bound by the consequences of his or her decision.[2] The court then cited this Court's more recent recitation of the essential standard for whether, and under what circumstances, the fugitive forfeiture rule applies in *Commonwealth v. Deemer*, 705 A.2d 827 (Pa. 1997), in

---

[2] Various courts and scholarship have also referred to the "fugitive forfeiture rule" as the "fugitive disentitlement doctrine," the "fugitive dismissal rule," and the "fugitivity-as-forfeiture rule."

which we explained that a "fugitive who returns to court should be allowed to take the system of criminal justice as he finds it upon his return: if time for filing has elapsed, he may not file; if it has not, he may." *Id.* at 829.

Finally, the Superior Court relied upon its own decision in *Commonwealth v. Doty*, 997 A.2d 1184 (Pa. Super. 2010), in which the court summarized this Court's prior case law, and offered that, "[o]n direct appeal, therefore, a defendant's status during the 30-day appeal period controls whether an appellate court will hear his appeal." *Id.* at 1188. The Superior Court emphasized the *Doty* court's conclusion that, although defendant's counsel filed a notice of appeal while the defendant remained a fugitive during the 30-day appeal period, it was of no moment, and counsel could not preserve the defendant's appellate rights because he failed to return to the court's jurisdiction prior to the expiration of the appeal period. *Id.* at 1189.

Thus, applying both our Court's prior pronouncements, and Superior Court precedent in virtually identical circumstances to the instant case, the court found Appellant's fugitivity during the period for filing a notice of appeal, regardless of his attorney's filing of a notice of appeal on his behalf or his subsequent return to custody, resulted in a forfeiture of his right to appeal. We granted allocatur to address this conclusion.[3]

---

[3] The issue, as set forth by Appellant, in our order granting Appellant's petition for allowance of appeal, stated:

> Was it not error for the Superior Court automatically to dismiss petitioner's appeal without merits review when this Court's consistent jurisprudence allows exceptions to a forfeiture determination and petitioner's circumstances track those exceptions?

*Commonwealth v. Adams*, 239 EAL 2017 (filed November 20, 2017) (order).

Before us, Appellant argues that, under Pennsylvania law, there is no automatic dismissal rule for litigants who are fugitives during part of the appellate process, but who return without disruption of the course of the appeal. Appellant offers essentially two arguments. First, Appellant maintains that his fugitivity did not forfeit his right to appeal because, pursuant to *Deemer*, a returned fugitive is entitled to take the criminal justice system as he finds it. According to Appellant, no extraordinary measures were required to hear his appeal, because, although he was absent during the 30-day appeal period, his counsel had timely filed a notice of appeal. Indeed, "[t]he appeal continued on the normal track toward decision with no interruption." Appellant's Brief at 14. Appellant criticizes the Superior Court in *Doty* for interpreting *Deemer* as requiring forfeiture notwithstanding counsel's actions, and for focusing solely on the fugitive's status during the 30-day appeal period. Appellant avers that *Doty*'s erroneous holding is more consistent with the now-abrogated *per se* forfeiture holding in *Commonwealth v. Jones*, 610 A.2d 439 (Pa. 1992), than this Court's more recent decision in *Deemer*. Appellant further emphasizes that the fugitive forfeiture rule aims to prevent disruption to the appellate process and ensure that the appellate court's judgment can be effectively enforced, and contends both goals are met here, without sacrificing his appellate rights. In so arguing, Appellant stresses the harshness of his sentence, his forfeiture of his constitutional right to be present at his trial, to consult with counsel, and to confront witnesses, the negative impact upon the jury of his absence, the flight-as-consciousness-of-guilt instruction, and the forfeiture of bail monies, and urges that fundamental fairness does not warrant the additional forfeiture of his appellate rights.

In his second argument, Appellant asserts that, unlike the United States Constitution, the Pennsylvania Constitution includes the fundamental guarantee to a criminal defendant of the right to appeal his conviction. Pa. Const. art. V, § 9. According

to Appellant, only where a defendant makes a knowing, voluntary, and intelligent relinquishment of his fundamental right to appeal should such a right be denied. Appellant avers that he made no such relinquishment of his right to appeal, should not be deprived of it by means of "an excessive application of forfeiture principles," and that the fugitive forfeiture rule should have only narrow application. Appellant's Brief at 22-23. Thus, Appellant submits that the law in this area should be aligned with the fundamental right to appeal and that no appeal should be dismissed where the defendant has returned to custody in time for the appellate process to proceed. Appellant contends, pointing to out-of-state cases, that any other application of the rule is punitive and unjustified in light of the existence of other sanctions for absconding.[4] Finally, Appellant urges that appellate review is worthy of special protection regardless of whether a defendant has fled, since review may be the only remedy available to correct serious error and ensure justice for a criminal defendant, and merits review should not be prohibited, at least in cases of fundamental error.

Preliminarily, the Commonwealth submits that Appellant "faces a predicament of his own creation," and emphasizes that, after having been sanctioned for his flight on a prior occasion, Appellant absconded again, absenting himself from his trial, conviction, and sentencing. Commonwealth's Brief at 10. After noting the foundations for the fugitive forfeiture rule, the Commonwealth offers that, after various iterations of the rule were espoused by our Court, leading to some confusion, in *Deemer*, the Court sought to provide clearer guidance. Indeed, the Commonwealth submits that, unlike Appellant's

---

[4] The Pennsylvania Association of Criminal Defense Lawyers ("PACDL") filed an *amicus* brief in support of Appellant, largely reasserting his arguments. The PACDL also asserts that the above-detailed decisional law is largely irreconcilable, urging this Court to reconsider the issue *ab initio*. The PACDL also advocates that this Court should abandon the rule entirely, and allow a fugitive's counsel to litigate an appeal *in absentia*, at least in the absence of prejudice.

interpretation of *Deemer*, under which a court must adjudicate a fugitive's claim no matter how long he remains at large so long as he returns prior to a dismissal of his appeal, *Deemer* is straightforward: a defendant's fugitive status forfeits all rights during the period of fugitivity. Here, the Commonwealth notes, Appellant did not return until over 10 months after the time for filing an appeal had expired, and, thus, it contends the Superior Court properly dismissed his appeal on that basis. More specifically, the Commonwealth proffers that *Deemer* focused on the defendant's conduct, not counsel's, which is only appropriate as it is for the accused, and not counsel, to decide whether to appeal. According to the Commonwealth, Appellant's interpretation would lead to absurd and disparate results, such as some attorneys filing notices of appeal *sua sponte* and others forgoing such action in the absence of direction from his client.

The Commonwealth argues that the result here is particularly deserved, as not only did Appellant initially flee to California, after his trial was rescheduled days before the primary prosecution witnesses had arranged to move to Florida, Appellant absconded again. Thus, Appellant was not only a fugitive, but a recidivist fugitive. The Commonwealth points out that Appellant's unlawful flight also directly impacted the appellate process as the trial judge declined to address any substantive issues, in light of Appellant's fugitive status, posing an impediment to meaningful appellate review. Further, the Commonwealth offers that, while prejudice to the Commonwealth could be reasonably presumed, if it had to be proven, it would require the expenditure of resources to monitor and re-interview witnesses, which would lead to factual disputes as to the delay attributable to Appellant's fugitive status, necessitating a remand to the trial court for a hearing on the issue of prejudice.

The Commonwealth counters Appellant's arguments, maintaining that, first, because Appellant's primary claim is that he received an illegal sentence, he has a

remedy through the filing of a petition pursuant to the Post Conviction Relief Act, a contention refuted by Appellant. The Commonwealth also notes that, although Appellant's claim relies heavily on the existence of a state constitutional right to appeal, this Court has long held that that right is conditioned upon compliance with the procedures for effectuating it. Moreover, according to the Commonwealth, Appellant's claim that the consequences of fugitive status were unknown and that his absconding would not impact his ability to appeal is undercut by the presumption that persons know the law, and the common sense concept that there are consequences for absconding. Further, the Commonwealth submits that, while Appellant claims that he has been punished in other ways for his flight apart from the fugitive forfeiture rule, such consequences followed his voluntary actions. It notes that, had Appellant returned within 30 days after his sentencing, he could have pursued his appeal, but he chose to remain at large until apprehended months later. Indeed, the Commonwealth explains that, at its heart, Appellant's argument challenges any limitations on appellate review. Finally, the Commonwealth argues that PACDL's contention that the fugitive forfeiture rule should be abandoned has been rejected by nearly every state and federal court, and notes that, unlike a trial *in absentia*, which is necessary for a final judgment, appeals are optional.

Our analysis begins by way of a brief background. The fugitive forfeiture rule began in the late 19th century as an equitable doctrine of criminal appellate procedure to be applied at the discretion of the appellate court. Traditionally, a convicted criminal defendant who fled from justice while his appeal was pending was "disentitled" from pursuing a criminal appeal. The rule was originally developed by the United States Supreme Court in *Smith v. United States*, 94 U.S. 97 (1897), wherein the Court dismissed the appeal of a convicted criminal who became a fugitive during the pendency of his appeal. In early opinions, the Supreme Court applied the rule out of concern that a

judgment adverse to the fugitive would not be enforceable against him. *Id.* at 97-98. The Court also concluded it was unfair that a fugitive could receive the benefits of a favorable adjudication of his appeal, but could avoid the consequences of an adverse adjudication. *Id.* at 97. In subsequent decisions, the Supreme Court offered additional rationales for the doctrine, including that disentitlement serves an important deterrent function and that it promotes an efficient and dignified appellate process. *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (*per curiam*) (determining that the fugitive waived his rights under the justice system and thus was "disentitle[d]" to his normal rights); *see also Estelle v. Dorrough*, 420 U.S. 534, 537 (1975) (pointing to efficient operation of the courts to justify dismissal of appeal); *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993) (highlighting need to protect dignity of appellate courts). Courts have since refined the rule, and it currently is invoked in both criminal and civil contexts. Broadly speaking, the rule provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades. Indeed, "[d]isposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law." *Estelle*, 420 U.S. at 537.

Over the last half century, Pennsylvania's experience with the fugitive forfeiture rule has varied in nature and scope. As far back as 1975, in *Commonwealth v. Galloway*, 333 A.2d 741 (Pa. 1975), this Court aligned its analysis with that of the United States Supreme Court, focusing on ensuring jurisdictional enforcement of a judgment. Specifically, in that decision, Galloway absconded before his capital appeal was listed for argument. This Court granted a general continuance pending his return to custody, which later occurred. The Commonwealth sought dismissal, but this Court denied relief, focusing on the fugitive forfeiture rule's purpose of ensuring that the appellate court's

judgment can be effectively enforced, and noting that Galloway's return to custody allowed that enforcement.

Ten years later, and concurrently with the reinvigoration of the enforcement of state constitutional rights, in *Passaro*, *supra*, the Court's focus changed to the constitutional right of appeal. In that case, Passaro absconded before his appeal was listed for argument. The Commonwealth sought dismissal, and the Superior Court granted relief. Passaro later returned to custody and sought reinstatement of his right to appeal, but the Superior Court denied such relief. On appeal, our Court explained that, although a litigant has a state constitutional right to appeal, it is conditioned on compliance with the procedures to effectuate the right. The Court then reiterated *Galloway*'s focus on the fugitive forfeiture rule's purpose of ensuring that the appellate court's judgment can be effectively enforced, but noted that it also ensures that a defendant who decides to bypass orderly criminal procedures is not permitted to seek relief under those procedures. Accordingly, the Court found that Passaro's fugitive status not only warranted the initial dismissal of his appeal, but also precluded reinstatement of his right to appeal.

The Court rendered a series of decisions in the mid-1990's reconsidering the scope of the fugitive forfeiture rule, engendering a period of uncertainty in this area of the law. Beginning with our 1992 decision in *Jones*, *supra*, the Court took an absolutist approach, denying appellate review. Specifically, Jones absconded before trial but counsel filed an appeal on his behalf, and Jones returned during the pendency of the appeal. The Superior Court quashed his appeal, and Jones appealed to this Court. The *Jones* Court echoed the teachings of its prior decisions that, although a litigant has a state constitutional right to appeal, it is conditioned on compliance with the procedures which effectuate that right, and that the fugitive forfeiture rule manifests the idea that a defendant who exits himself from orderly criminal procedures should not benefit from those

procedures.  Reviewing *Passaro* and other similar decisions, the Court held that fugitivity "at any time after post-trial proceedings commence" "acts as a *per se* forfeiture of [the] right of appeal" which is "irrevocable and continues despite the defendant's capture or voluntary return to custody."  *Jones*, 610 A.2d at 441.  Accordingly, the Court held that, due to Jones' fugitive status, he forfeited his right to appeal.

Two subsequent decisions, rendered only three years after *Jones*, brought the *Jones* Court's *per se* approach into question.  In *In the Interest of J.J.*, 656 A.2d 1355 (Pa. 1995) (plurality), J.J. was adjudicated delinquent and filed an appeal, but absconded. The Commonwealth filed an application to dismiss, and J.J. returned to custody before the disposition of the application.  Nevertheless, the Superior Court granted the application.  J.J. appealed, and our Court, in a plurality decision, vacated and remanded for further proceedings.  The plurality opined that courts have discretion to determine whether fugitivity warrants forfeiture, and, because the Superior Court's *per curiam* order did not indicate whether it was aware of its discretion, the matter should be remanded.  A concurrence opined that the plurality's view that courts have discretion to determine whether fugitivity warrants forfeiture essentially overruled *Jones sub silentio*, and without justification.  Nevertheless, the concurrence opined that the fugitive forfeiture rule should not be rotely applied in juvenile delinquency proceedings, particularly in light of their focus on juveniles' best interests.  *See also Commonwealth v. Huff*, 658 A.2d 1340 (Pa. 1995) (plurality) (same).

The foreshadowing by *J.J.* and *Huff* was borne out a mere two years later, in the Court's seminal 1997 decision in *Deemer*, wherein Justice John Flaherty writing for the Court attempted to bring clarity to the fugitive forfeiture rule, striking a compromise approach.  In that matter, Deemer fled before trial, and his counsel filed post-trial motions on his behalf, which the trial court dismissed on the basis of Deemer's fugitive status.

Deemer later returned to custody and filed a *pro se* motion to reinstate his right to file post-trial motions. The trial court denied relief, indicating that, although it was aware it had discretion to grant relief, Deemer's absconding without justification warranted forfeiture of his right to file post-trial motions. The Superior Court affirmed.

After reviewing the above precedent giving rise to *Jones*, as well as the subsequent decisions undermining *Jones*' continuing vitality, this Court ultimately rejected *Jones*' harsh approach, ruling that a fugitive forfeits rights that lapse during the period of fugitivity, but that a fugitive who returns to custody may exercise rights that have not yet lapsed:

> The difficulty with *Jones* is that it sets up an absolute rule of forfeiture of appellate rights. Returned fugitives should be punished, if appropriate, for violations of court orders or statutes which compel their presence in court, but they should not be punished additionally by forfeiture of their appellate rights. On the other hand, a returned fugitive should not benefit from his fugitive status. Courts should not take extraordinary measures, such as granting motions to reinstate post trial motions or requests to appeal *nunc pro tunc*, in order to accommodate fugitives who have now returned and wish to pursue post-trial measures. Rather, a fugitive who has returned to the jurisdiction of the court should be allowed to exercise his post-trial rights in the same manner he would have done had he not become a fugitive. If he returns in time for post-trial motions, he should be allowed to file them. **If he returns after the time for post-trial motions has expired, his request to file post-trial motions or to reinstate post-trial motions should be denied. If he became a fugitive between post-trial motions and an appeal and he returns before the time for appeal has expired and files an appeal, he should be allowed to appeal. If he returns after the time for filing an appeal has elapsed, his request to file an appeal should be denied.** If he becomes a fugitive after an appeal has been filed, his appeal should be decided and any fugitive status should be addressed separately. **In short, a fugitive who returns to court should be allowed to take**

**the system of criminal justice as he finds it upon his return: if time for filing has elapsed, he may not file; if it has not, he may.**

*Deemer*, 705 A.2d at 829 (emphasis added). Thus, the *Deemer* Court not only rejected *Jones*' *per se* approach, but created an easily-applied and straight-forward standard by which to determine the appellate rights of the fugitive. In sum, *Deemer* held that a fugitive forfeits all rights that expire during his fugitivity, but that, upon return, a fugitive may still exercise rights that have not expired. Applying its newly-minted standard, the Court found that, as Deemer had absconded from the jurisdiction and had not returned within the time allowed for post-trial motions, the lower tribunals were correct in denying his motion to reinstate his post-trial motions.

Acknowledging this decisional background, Appellant places great emphasis on our Constitution, which, unlike the federal Constitution, guarantees the right to appeal. Article V, § 9 of the Pennsylvania Constitution, Right of Appeal, provides:

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Pa. Const. art. V, § 9. The primary thrust of Appellant's argument is that the constitutional nature of the right requires a reworking or rejection of, the *Deemer* standard.

While the right to appeal is unquestionably a significant right, nevertheless, our Constitution only guarantees our citizens be afforded the *opportunity* to exercise such right: "[T]he right to appeal is conditioned upon compliance with the procedures established by this Court, and a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision." *Passaro*, 476 A.2d at 348. The judiciary has created

procedures and rules to allow the orderly functioning of a system of adjudication for determining individual rights and to effect justice. Those who flout their day in court, and who voluntarily, willfully, and purposefully flee from a court's jurisdiction, are acting in contravention of their constitutional rights and the very system set up to vindicate such rights.

Even accepting a greater focus upon a fugitive's constitutional right of appeal, we continue to find that the *Deemer* standard strikes the appropriate balance between upholding the right of appeal guaranteed by our Constitution and ensuring the integrity of the court system designed to guarantee those rights. Appellant ignores several of the stated purposes of the fugitive forfeiture rule which this Court recognized as early as *Passaro*, and which plainly apply in his case. The fugitive forfeiture rule does not merely serve to ensure the orderly operation of the appellate process and ensure that the appellate court's judgment can be enforced; it also deters a defendant's flight or escape, encourages self-surrender as soon as possible, and furthers efficiencies in, and promotes the dignity of, appellate courts.[5]

Indeed, context is critically important when addressing constitutional rights; here, it is Appellant who has eschewed his right to appeal, and, by absconding, has flagrantly and deliberately bypassed the entire judicial process. Related thereto, in contending that his right to appeal may be relinquished only through a knowing, voluntary, and intelligent waiver, Appellant fails to acknowledge the critical distinction between waiver and forfeiture. As we explained in *Commonwealth v. Lucarelli*, 971 A.2d 1173 (Pa. 2009),

---

[5] Indeed, it is for this same reason that we eschew the approach of the few sister courts which have allowed appeals in these instances under their state constitutions, for failing to recognize the countervailing interest of the integrity and dignity of judicial appellate review. *See, e.g., State v. Tuttle*, 713 P.2d 703 (Utah 1985); *Mascarenas v. State*, 612 P.2d 1317 (N.M. 1980).

waiver connotes a voluntary relinquishment of a right, while forfeiture results from egregious conduct:

> [W]e find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in *United States v. Goldberg*, 67 F.3d 1092, 1099-1101 (3d Cir. 1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004) (quoting *Goldberg*, supra at 1100-02).

*Lucarelli*, 971 A.2d at 1179.

Indeed, unlike waiver, "which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F.3d at 1100. Thus, we reject Appellant's attempts to assert his constitutional right to appeal in a vacuum, and emphasize that it is Appellant's own wrongdoing which has disrupted the judicial system created to vindicate his rights, leading to their forfeiture.

That Appellant's counsel filed a notice of appeal while Appellant was a fugitive is of no moment, as not only has the focus of our prior decisions been on a *defendant's* impact on the court system, but there are serious questions regarding the ability of an attorney to pursue an appeal without his client's knowledge and approval. *See Doty*, 997 A.2d at 1189. The decision to appeal is personal to the defendant and entirely discretionary. Moreover, if *Deemer* is to have any meaning, wherein post-trial motions were filed in Deemer's absence but we nonetheless found he forfeited his right to file such motions, the fugitive forfeiture rule must apply whether or not, as herein, counsel takes an appeal on his client's behalf. *See also Ortega-Rodriguez*, 507 U.S. at 242 n.12 (where

a defendant flees during the appeal period, but his "attorney files an appeal for him in his absence, the appeal will be subject to dismissal under straightforward application of *Smith* [concerning enforceability of judgment] and *Molinaro* [concerning disentitlement to call upon resources of the court for determination].");  *Doty*, 997 A.2d at 1189 (finding defendant could not resurrect his appellate rights, even though counsel filed notice of appeal during appeal period, because defendant failed to return to court's jurisdiction prior to the expiration of the appeal period); *Commonwealth v. Hunter*, 952 A.2d 1177, 1178 (Pa. Super. 2008) (concluding that, because the appellant remained a fugitive from the time of his scheduled sentencing until after his counsel had filed an appeal and the appeal deadline passed, he was not entitled to pursue an appeal).  Furthermore, if counsel's actions in filing an appeal while the defendant was a fugitive preserved appellate review, there would be arbitrary and disparate results depending upon whether a fugitive's attorney acted *sua sponte* by filing a notice of appeal without consulting with the fugitive, or decided not to do so.  Related thereto, counsel's action or inaction in this regard could give rise to claims of ineffectiveness, as well as creating incentives for the parties to either speed the proceedings or to slow them.[6]

Furthermore, while we recognize that there are criminal sanctions for escape, *see*, *e.g.*, 18 Pa.C.S. § 5121, we reject Appellant's contention that forfeiture of his appellate rights while a fugitive is unjustified punishment, as his fugitivity has caused, and would cause, unnecessary delay in the appellate process.  At a minimum, albeit not dispositive,

---

[6] We also note that a trial *in absentia* is qualitatively distinct from the appeals process, and simply because trials can be conducted without a defendant does not suggest the appellate process is similarly required to proceed in a defendant's absence.  Trials can be conducted *in absentia* when a defendant absconds because, otherwise, the defendant's fugitivity would preclude the imposition of a judgment.  Once a defendant has been convicted and sentenced, however, his judgment of sentence is final, unless he chooses to appeal.  Thus, because the appellate process is entirely discretionary, the same considerations that allow for a trial *in absentia* are not present on appeal.

we note that, given that the trial court, due to Appellant's fugitive status, declined to address his claims on the merits, if we granted Appellant relief, the matter would need to be remanded to the trial court for the preparation of an opinion on those claims.

Thus, for these reasons, we reaffirm our seminal decision in *Deemer* as an appropriate accommodation of the competing interests in the right to appeal and the proper functioning of the appellate court system. We reiterate that a defendant's fugitive status does not *per se* disqualify him or her from appellate review; however, when a defendant absconds, and then returns to the court system, he takes the criminal justice system as he finds it. Under this straight-forward approach, the focus is on the fugitive's conduct, and the timing of his return to the criminal justice system. Moreover, counsel's actions to preserve the fugitive's rights are ineffectual. Thus, for the reasons offered above, regardless of whether counsel has filed a notice of appeal in the fugitive's absence, if the period for filing an appeal has not expired, the fugitive is entitled to file an appeal upon his return; and, if the time for filing has elapsed, the fugitive no longer enjoys the right to file an appeal.

Applying the teachings of *Deemer* to this matter, we note that Appellant absconded prior to trial, during sentencing, during post-trial motions, and during the 30-day notice of appeal period. Because, upon Appellant's return, his time for appeal had elapsed, Appellant forfeited appellate review, regardless of whether his counsel filed a timely notice of appeal or appellate brief.[7] Accordingly, we hold that the Superior Court correctly affirmed Appellant's judgment of sentence after the trial court concluded he forfeited his appellate rights due to his fugitive status.

Order affirmed.

---

[7] As noted above, whether Appellant could, at this juncture, obtain relief from an illegal sentence under the Post Conviction Relief Act is disputed by the parties, but beyond the scope of this appeal.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty, Wecht and Mundy join the opinion.