J-A14034-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TOD A. GALLAGHER | : | No. 1529 WDA 2019 |

Appeal from the Order Entered September 23, 2019
in the Court of Common Pleas of Butler County
Criminal Division at No(s):  CP-10-CR-0000407-2019

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                FILED OCTOBER 28, 2020

The Commonwealth of Pennsylvania appeals from the Order granting the suppression Motion filed by Tod A. Gallagher ("Gallagher").[1]  We affirm.

The trial court summarized the history of this appeal, as presented at the suppression hearing, as follows:

At [the] hearing, Patrolman Chris Kopas [("Patrolman Kopas")] testified that he has been employed with the Adams Township Police Department for five[-]and[-]a[-]half years [].  He testified that on November 9, 2019[,] at 1:42 a.m., he responded to a 911 dispatch from a female caller reporting an attempted kidnapping who [sic] had escaped and was hiding.  The female caller was 16[ ]years[ ]old and reported that she had a head injury.  Patrolman Kopas proceeded to the location[,] which was

_____

[1] In accordance with Pa.R.A.P. 311(d), the Commonwealth certified that the trial court's suppression Order has substantially handicapped its prosecution of the case.  See Commonwealth v. James, 69 A.3d 180, 185 (Pa. 2013) (stating that the Commonwealth's appeal of a suppression order is proper when the Commonwealth certifies in good faith that the suppression order substantially handicaps its prosecution).

in the general location of the self-storage units on Mars-Evans City Road in the township. The patrolman found the female and reported that she was hysterical, panicky[,] and scared. An EMS unit responded to check her well-being and[,] during that time, [the victim] told the patrolman that she was picked up in McKeesport by [Gallagher] and Cody Seagriff [("Seagriff")] earlier in the evening. They stopped at a gas station and the Evans City Cemetery[,] where they drank alcohol, after which they went to 1260 Mars-Evans City Road to see Joe Perkins [("Perkins")]. The female next reported that she woke up on the side of a road with someone on top of her and their hand down the front of her pants. She claimed that her pants and underwear were pulled down. She was able to get away and hid in the woods.

... The victim believed the individual who was on top of her was [Gallagher]. The victim was transported to UPMC Cranberry to conduct a sexual assault examination.

Trial Court Opinion, 9/30/19, at 1-2.

Gallagher was subsequently located and, at that time, placed under arrest for suspected driving under the influence. Id. at 2. At the police station, Gallagher was advised of his Miranda[2] rights. While at the police station, officers interviewed Gallagher about the victim's allegations for approximately 30 minutes. The interview concluded when Gallagher's father arrived to take him home.

The trial court further summarized what next transpired, based upon the evidence presented at the suppression hearing, as follows:

At [the] hearing, Detective Michael Bailey [("Detective Bailey")] [] testified. He has been employed as a police officer for approximately seventeen (17) years and was assigned to investigate this case. Patrolman Kopas informed the detective of the allegations and evidence collected. [Detective] Bailey

_____

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

contacted [Gallagher] on November 18, 2014[,] and left a message. [Gallagher] came to the station on November 19, 2014[,] to talk about the incident. Det[ective] Bailey informed [Gallagher] that he was not under arrest and that he was free to leave at any time. [Gallagher] agreed to have a conversation.

Det[ective] Bailey asked [Gallagher] if he could look at his cell phone. [Gallagher] did not object and showed [Detective Bailey] a picture of the two girls that he was with the previous weekend. Commonwealth's Exhibit "2" is the township's consent form to search stored electronic media. [Gallagher] signed it on November 19, 2014....

Id. at 2-3.

Gallagher subsequently filed an Omnibus Pretrial Motion, which included a Motion to Suppress the evidence seized as a result of the search of the cell phone. After a hearing, the trial court granted, in part, Gallagher's suppression Motion. Relevant to this appeal, the trial court suppressed all evidence seized as a result of the search of Gallagher's cell phone and the download of the phone's data. See id. at 3. Thereafter, the Commonwealth filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Commonwealth presents the following claims for our review:

[1.] Whether the trial court committed legal error by misapplying/misinterpreting the fact[-]specific holding in Commonwealth v. Fulton, 179 A.3d 475, 484 (Pa. 2018), by stating that the Fulton [C]ourt holding required a warrant to be obtained before lawfully searching a cell phone[,] thus ignoring any warrant exception such as the consent exception?

[2.] Whether the record supports the trial court's finding that [Gallagher] did not knowingly consent to the search and seizure of the stored cell phone data?

Commonwealth's Brief at 6 (capitalization omitted).

The Commonwealth first claims that, in granting suppression of the cell phone data, the trial court misapplied/misinterpreted our Supreme Court's holding in Fulton. Id. at 13. The Commonwealth acknowledges the constitutional protection against unreasonable searches and seizures. See id. at 14. Further, the Commonwealth acknowledges that, "[e]ven in circumstances where the suspect is in custody, the search of an individual's cell phone requires a warrant." Id. at 14. However, the Commonwealth argues that the extension of the prohibition on warrantless searches and seizures of cell phones is not without exception. Id. at 15. According to the Commonwealth, "[c]onsent can validate an otherwise illegal and unreasonable search where the consent is 'unequivocal, specific and voluntary.'" Id. (quoting Commonwealth v. Cleckley, 738 A.2d 427, 430 (Pa. 1999)). The Commonwealth argues that the trial court erred to the extent that it interpreted Fulton as eliminating the exception of consent. See id. at 16.

> Initially, we set forth our scope and standard of review:
>
> When reviewing a ruling on a motion to suppress, this Court is bound by the factual findings made by the suppression court that are supported by the record but review its legal conclusions de novo. Commonwealth v. Cooley, … 118 A.3d 370, 373 (Pa. 2015). Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the … prevailing party and any uncontradicted evidence presented by [the non-prevailing party]. Commonwealth v. Johnson, … 160 A.3d 127, 138, 139 n.12 (Pa. 2017)….

Fulton, 179 A.3d at 487.

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals, their homes, their papers, and their effects and possessions from "unreasonable searches and seizures." U.S. Const. amend. IV; Pa. Const. art. I, § 8. For a search to be lawful, police must first obtain a warrant, supported by probable cause, from a neutral and detached magistrate. Commonwealth v. Johnson, 160 A.3d at 140 (Pa. 2017). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." Commonwealth v. Strickler, 757 A.2d 884, 888 (Pa. 2000).

In Fulton, our Supreme Court cautioned that "if a member of law enforcement wishes to obtain information from a cell phone, get a warrant. The failure to do so [violates a defendant's] rights under the Fourth Amendment to the United States Constitution." Fulton, 179 A.3d at 489.

Generally, one of the limited exceptions to the warrant requirement, recognized by the United States Supreme Court, is a consensual search. Strickler, 757 A.2d at 888. "[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Florida v. Jimeno, 500 U.S. 248, 250-51 (1991).

Our review discloses no indication, in the trial court's Opinion, that the court ignored this exception to the warrant requirement, or interpreted Fulton

as eliminating this exception. Rather, the trial court focused on whether Gallagher had knowingly and voluntarily consented to the search and "dump" of all data from his cell phone. See Trial Court Opinion, 11/19/19, at 2-3. As the trial court explained in its Opinion, the court's reference to Fulton "was for the purpose of setting forth the general rule in this area." Id. at 2. Because the trial court did not interpret Fulton as excluding well-recognized exceptions to the warrant requirement, the Commonwealth's first claim lacks merit.

In its second claim, the Commonwealth challenges the trial court's finding that Gallagher did not knowingly consent to the search and seizure of his cell phone's data. Commonwealth's Brief at 17. The Commonwealth specifically challenges the trial court's determination that Gallagher's consent was not freely given during the November 19, 2014, interview. Id. In particular, the Commonwealth disputes the trial court's reliance upon the fact that Gallagher was not advised of his right to refuse the search of his cell phone. Id. Citing, inter alia, Commonwealth v. LaMonte, 859 A.2d 495 (Pa. Super. 2004), the Commonwealth sets forth the following factors to consider in determining whether consent was voluntarily given: "the custodial status of the consenting party; the setting in which the consent was given; the age, intelligence, and educational history of the consenting party; and, what was said or done contemporaneous with the consent." Commonwealth's

Brief at 18. The Commonwealth points out the lack of a requirement that the consent be in writing. Id.

The Commonwealth asserts that Gallagher consented to the search of his cell phone. Id. at 18. According to the Commonwealth, Gallagher's consent eliminated the need for a search warrant for the cell phone. Id. at 19. The Commonwealth directs our attention to evidence that Gallagher was advised that he was not under arrest, and was free to leave at any time. Id. at 19. Upon being advised of his Miranda rights, the Commonwealth states that Gallagher agreed to talk with Detective Bailey. Id. at 20. Further, the Commonwealth points out Detective Bailey's testimony that Gallagher had agreed to allow the detective to look at his phone and Gallagher signed a consent form, Commonwealth's Exhibit "2," which was provided by Detective Bailey. Id. Finally, Detective Bailey testified that it was Gallagher who first offered to show his cell phone to Detective Bailey. Id. at 21. Based upon this evidence, the Commonwealth asserts that Gallagher voluntarily and knowingly consented to the search of his cell phone. Id.

As our Supreme Court has explained,

[o]ne of the limited exceptions to the warrant requirement is a consensual search. [W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an investigative tool utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully

demarked limitations as to what constitutes a valid consent search.

First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances.

If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent....

Commonwealth v. Valdivia, 195 A.3d 855, 861-62 (Pa. 2018) (footnote and internal quotation marks and citations omitted). Finally, we recognize that "one's knowledge of his or her right to refuse consent remains a factor in determining the validity of consent[,]" and whether the consent was the "result of duress or coercion." Cleckley, 738 A.2d at 433.

In its Pa.R.A.P. 1925(b) Opinion, the trial court stated the following:

At the July 22, 2019 omnibus hearing, Adams Township Det[ective] [] Bailey testified that he was assigned to investigate the sexual assault allegations against [Gallagher]. On November 18, 2014, Det[ective] Bailey called [Gallagher] and left a voice mail message asking [Gallagher] to call him. An interview was scheduled for the following day, November 19th. [Gallagher] arrived at the station on the 19th and the detective and [Gallagher] went into the interview room. [Detective Bailey] testified that he advised [Gallagher] that he was not under arrest and that he was free to leave at any time. The detective also advised [Gallagher] that he wanted to speak with him about the incident that took place the prior weekend. [Gallagher] agreed to talk with Det[ective] Bailey.

Det[ective] Bailey testified that [Gallagher] showed him a picture on his cell phone of the two girls that they were with. The detective then asked [Gallagher] "if he minded if we look at his phone. He had no objection to me looking at his phone. I did decide at that time to have him consent to that with a—we have

- 8 -

a form for electronic media. So, he was asked to sign that." N.T., Omnibus Pre-Trial Hearing, July 22, 2019, pg. 31. [Gallagher] signed the form (Commonwealth's Exhibit "2").

Det[ective] Bailey's testimony continued: "Commonwealth: Q. Did he cooperate and give you his phone. A. Yes. Q. And allow you to search it? A. Yes, he did." Id. at pg. 32. The detective testified that [Gallagher] was not handcuffed during the interview[,] and that [Gallagher] walked out of the police station that day.

On cross-examination, Det[ective] Bailey explained that he did not advise [Gallagher] of his rights with respect to his cell phone and acknowledged that the form submitted as Commonwealth's Exhibit "2" does not explain those rights either. Id. at pg. 44. The form appears to be incomplete in that the heading of the form states, "CONSENT TO SEARCH STORED ELECTRONIC MEDIA," but the actual wording of the document neither explains the rights which a person is waiving nor what they are[,] in fact, consenting to. The record reflects that [Gallagher] was never advised of his constitutional right to privacy of the data stored on his cell phone and that he was free to deny the request to consent to [the] search.

Trial Court Opinion, 11/19/19, at 2-3. Upon our review of the record,[3] we agree.

Upon review, the trial court's finding that Gallagher did not knowingly consent to the search of his cell phone is supported in the record, and its legal conclusions are sound. See id.; see also Commonwealth v. Adams, 200 A.3d 944, 954 (Pa. 2019) (recognizing that waiver "requires a knowing and

---

[3] The consent form signed by Gallagher, Commonwealth's Exhibit "2," is not included in the record certified to this Court on appeal. Appellate courts may only consider facts which have been duly certified in the record on appeal. See Commonwealth v. Bracalielly, 658 A.2d 755, 763 (Pa. 1995).

intentional relinquishment of a known right" (citation omitted, emphasis added)).  We therefore affirm the Order of the trial court.

Order affirmed.

Judge Shogan joins the memorandum.

Judge McLaughlin files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/28/2020