2025 PA Super 13

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN A. MATTHEWS | : | |
| | : | |
| Appellant | : | No. 2093 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 5, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007400-2021

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

OPINION BY STABILE, J.:                              **FILED JANUARY 21, 2025**

Appellant, John A. Matthews, appeals from his judgment of sentence of 17-34 years' imprisonment plus five years' probation for rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion ("IDSI"), sexual assault, corruption of minors, and related offenses. We quash this appeal as untimely.

The evidence adduced during Appellant's non-jury trial was as follows. In the spring of 2019, Appellant was living at a house in Philadelphia with his girlfriend (the victim's mother), her daughter (sixteen-year-old victim J.P.) and her son. One day, J.P. got in trouble at school, and her mother and Appellant picked her up from school early to remain at home for the rest of the day. Because her mother was working late, J.P. was left alone with Appellant.

While alone with J.P., Appellant began asking her about what types of punishments she should receive. J.P. suggested taking her phone away or

grounding her, but Appellant appeared unsatisfied and proposed other options that made her very uncomfortable. First, he went through J.P.'s underwear and made inappropriate comments. Next, he ordered her to undress and took pictures of her. He then instructed her to assume a push-up position, applied baby oil to her naked body and struck her three to five times with a belt. Despite J.P.'s pleas to stop, Appellant insisted that a different punishment was necessary. He coerced her into stating on video that she permitted him to punish her. Appellant then proceeded to penetrate J.P. vaginally with his penis.

After these assaults, J.P. began staying with her grandmother more frequently. One night, J.P.'s mother and Appellant insisted that she return home and clean her room. Appellant picked her up early the next morning. After J.P.'s mother left for work, Appellant once again asked her what her punishment should be. J.P. again suggested normal punishments, such as taking away her phone. Appellant, however, again struck her three to four times on the back with a belt and forced her to engage in sexual intercourse. On this occasion, Appellant forced J.P. to perform oral sex.

Appellant "punished" the victim in a similar manner three to four more times until mid-October of 2019. J.P. did not initially disclose Appellant's actions to anyone else because she feared the possibility of being separated from her brother. She intended to endure the situation until her eighteenth birthday, at which point she planned to leave her mother and take care of her brother independently. However, the emotional impact of the abuse

overwhelmed her and caused her friends and school counselor to notice that something was wrong. On November 14, 2019, the counselor reported Appellant to the Department of Human Services.

On July 15, 2021, Appellant was arrested. On November 29, 2022, the case proceeded to trial. The court found Appellant guilty of the above-mentioned offenses and deferred sentencing pending a pre-sentence investigation. On April 5, 2023, the date of sentencing, Appellant informed his attorney that he would not attend court without providing a valid reason. At the sentencing hearing, a police officer testified that she conducted an exhaustive search for Appellant's whereabouts, checking local hospitals, prisons, the state prison system, the PARS system, and the Medical Examiner's Office, all yielding negative results. N.T., 4/5/23, at 6-7. The court then sentenced Appellant in absentia.

On June 5, 2023, two months after sentencing, Appellant was apprehended. On July 10, 2023, Appellant filed an untimely post-sentence motion, which the trial court denied. On July 25, 2023, the trial court *sua sponte* granted Appellant leave to file a notice of appeal *nunc pro tunc*. On August 9, 2023, counsel for Appellant filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this appeal, Appellant contends that his convictions for rape, sexual assault, simple assault, indecent assault and IDSI should have merged for purposes of sentencing, and that the evidence was insufficient to sustain his conviction for corruption of minors. In response, the Commonwealth argues

that this appeal should be quashed due to Appellant's failure to file a timely appeal. We agree that the appeal must be quashed.

In **Commonwealth v. Deemer**, 705 A.2d 827 (Pa. 1997), the defendant was present for trial but failed to return to court when the jury announced its guilty verdict. He did not appear for sentencing, and the court sentenced him in absentia. Counsel filed post-verdict motions on the defendant's behalf prior to sentencing as well as post-sentence motions, but the court dismissed all motions due his fugitive status. Two months later, the defendant was apprehended. He filed a motion to reinstate his post-verdict motions *nunc pro tunc*, but the court denied this motion because the defendant had knowingly absconded without justification. The Superior Court affirmed, holding that the court's refusal to reinstate the post-verdict motions was a valid exercise of the court's discretion.

Our Supreme Court affirmed, reasoning:

[A] returned fugitive should not benefit from his fugitive status. Courts should not take extraordinary measures, such as granting motions to reinstate post trial motions or requests to appeal *nunc pro tunc*, in order to accommodate fugitives who have now returned and wish to pursue post-trial measures.

Rather, a fugitive who has returned to the jurisdiction of the court should be allowed to exercise his post-trial rights in the same manner he would have done had he not become a fugitive. If he returns in time for post-trial motions, he should be allowed to file them. If he returns after the time for post-trial motions has expired, his request to file post-trial motions or to reinstate post-trial motions should be denied. If he became a fugitive between post-trial motions and an appeal and he returns before the time for appeal has expired and files an appeal, he should be allowed

to appeal. If he returns after the time for filing an appeal has elapsed, his request to file an appeal should be denied.

Applying this rule to the present case, [the defendant] voluntarily absented himself from the jurisdiction and did not return within the time allowed for post-trial motions. Both lower courts were correct, therefore, in denying his motion to reinstate his post-trial motions.

*Id.* at 829.

More recently, in *Commonwealth v. Adams*, 200 A.3d 944 (Pa. 2019), after the defendant absconded before trial and again in the middle of trial, and he was convicted and sentenced in absentia. He remained a fugitive during the thirty-day appeal period, but his attorney filed a notice of appeal during this period. The trial court held that the defendant forfeited all issues on appeal due to his fugitive status. The defendant was arrested after the thirty-day appeal period expired but before the deadline for filing his brief in the Superior Court. The Superior Court affirmed the defendant's judgment of sentenced on the ground that the defendant forfeited his claims. The Supreme Court affirmed, reasoning that the defendant's fugitive status during the period for filing a notice of appeal caused him to forfeit his right to appeal, even though his attorney filed a timely notice of appeal on his behalf and he later returned after the appeal period ended, but prior to the deadline for filing an appellate brief.

The *Adams* court reaffirmed *Deemer's* standard that a fugitive forfeits all rights that expire during his fugitivity, but upon return may still exercise rights that have not expired. *Id.*, 200 A.3d at 952. The Court observed that

the concepts of forfeiture and waiver were separate and distinct. Waiver "connotes a voluntary relinquishment of a known right." *Id.* (citations omitted). Forfeiture is the loss of a right due to the defendant's "extremely serious misconduct . . . regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Id.* (citations omitted). The Court continued:

> A defendant's fugitive status does not *per se* disqualify him or her from appellate review; however, when a defendant absconds, and then returns to the court system, he takes the criminal justice system as he finds it. Under this straight-forward approach, the focus is on the fugitive's conduct, and the timing of his return to the criminal justice system. Moreover, counsel's actions to preserve the fugitive's rights are ineffectual. Thus, for the reasons offered above, regardless of whether counsel has filed a notice of appeal in the fugitive's absence, if the period for filing an appeal has not expired, the fugitive is entitled to file an appeal upon his return; and, if the time for filing has elapsed, the fugitive no longer enjoys the right to file an appeal.
>
> Applying the teachings of *Deemer* to this matter, we note that Appellant absconded prior to trial, during sentencing, during post-trial motions, and during the 30-day notice of appeal period. Because, upon Appellant's return, his time for appeal had elapsed, Appellant forfeited appellate review, regardless of whether his counsel filed a timely notice of appeal or appellate brief.

*Id.* at 955.

In the present case, Appellant voluntarily absented himself from sentencing and was not apprehended until two months after sentencing, one month after the time for filing an appeal had lapsed. Thus, under *Deemer* and *Adams*, Appellant forfeited his right to file an appeal. *Id.*

The trial court erred for two reasons by granting Appellant leave to appeal *nunc pro tunc*. First, the trial court lacked jurisdiction to enter such an order because more than thirty days had passed after sentencing. 42 Pa.C.S.A. § 5505 (trial court may modify or rescind final order only within thirty days after entry of order). Second, both **Deemer** and **Adams** direct that courts should not take "extraordinary measures, such as granting . . . requests to appeal *nunc pro tunc*, in order to accommodate fugitives who have now returned and wish to pursue post-trial measures." **Id.**

We note that the Commonwealth did not object in the trial court to the order granting *nunc pro tunc* relief or appeal this order. Nevertheless, the Commonwealth has not waived the right to object to the *nunc pro tunc* order in this Court because the forfeiture principles enunciated in **Deemer** and **Adams** apply regardless of waiver principles. **See Adams**, 200 A.3d at 952, 955. Under forfeiture principles, a fugitive such as Appellant "takes the criminal justice system as he finds it" upon his return to the criminal justice system. **Id**. Since the appeal period expired before Appellant's apprehension, he has forfeited the right to file a direct appeal to this Court.

Because Appellant's appeal is untimely, we lack jurisdiction to address this appeal, and we quash it.[1]

_____

[1] Several nonprecedential decisions from this Court provide additional persuasive authority for our decision in the present case. **See Commonwealth v. Yates**, 2023 WL 2770773 (Pa. Super., Apr. 4, 2023)
*(Footnote Continued Next Page)*

Appeal quashed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/21/2025

_____

(judgment order) (defendant failed to appear during trial or sentencing, court sentenced defendant in December 2021, defendant returned to Commonwealth's custody in early 2022, defendant filed untimely post-sentence motion in March 2022, and defendant filed appeal in August 2022; appeal quashed under ***Deemer*** as untimely); ***Commonwealth v. Cavalcante***, 2024 WL 4491907, *3 (Pa. Super., Oct. 15, 2024) (where sentence was entered on August 22, 2023, defendant became fugitive on August 31, 2023 (during ten-day post-sentence motion period), and defendant was apprehended on September 13, 2023, counsel's attempt to file post-sentence motions on September 1, 2023 was of "no moment" and did not toll thirty-day appeal period; thus, defendant's appeal on September 29, 2023 was untimely, and appeal was quashed).